## RUTH P. ROSS v. SEBORN PERRY

### No. 74

(Filed 16 June 1972)

**1. Brokers and Factors § 6— real estate broker — right to commission**

A real estate broker, employed by the owner to sell or lease designated property, is entitled to his commission when he negotiates a sale or lease within the terms of his authority; and his right is not affected if the principal voluntarily cancels the contract which the broker negotiated.

2. **Brokers and Factors § 6— lease of property — realtor's commission — condemnation of the property**

　　Where an agreement entered into by the lessor of hotel property and a realtor provided that, as compensation for the realtor's services in procuring a 50-year lease of the property, the lessor would pay the realtor "5% of the rent received from" the lessee, that the lessor was to send the realtor a check for his 5% within five to fifteen days from the time the lessor received the lessee's check, and that the lessee "will continue to do this as long as the lease is in force. No longer," it was *held* that the lessor's obligation to pay the 5% commission terminated when a municipal redevelopment commission condemned and took possession of the property.

3. **Eminent Domain § 5— condemnation of rental property — value — rent or income**

　　When rental property is taken for a public use, the owner is entitled to recover only the fair market value of the property; in determining its fair market value, the rental value, or income, of the property is merely one of the factors to be considered.

4. **Eminent Domain § 16— condemnation of rental property — award — rights of lessee**

　　When condemned land is subject to a leasehold estate the tenant is entitled to share in the award since the value of his interest is a part of the value of the fee; ordinarily the value of the lease is the difference between the rental value of the unexpired term and the rent reserved in the lease.

5. **Eminant Domain §§ 5, 16— condemnation of rental property — award — rent**

　　When the owner of the fee is required to divide a condemnation award with the owner of the leasehold, he is not receiving rent from the lease but is, in effect, paying a penalty for it.

6. **Brokers and Factors § 6; Eminent Domain § 5— condemnation of rental property — unaccrued rents — realtor's commissions**

　　Where, as compensation for the procurement of a 50-year lease of hotel property, a realtor was to receive a commission each month as long as the lease continued and rents were collected from the tenant, the realtor cannot base a claim for commissions on an award to the owner for condemnation of the property by a municipal redevelopment commission, since the award was not a payment of unaccrued rentals but was the fair market value of the hotel property in cash.

　　APPEAL by plaintiff pursuant to G.S. 7A-30(2) (1969) from the decision of the Court of Appeals, reported in 12 N.C. App. 47, 182 S.E. 2d 655 (1971), affirming the judgment of *Exum, J.,* at the 26 October 1970 Session of GUILFORD. This appeal was docketed and argued at the Fall Term as No. 119.

Ross v. Perry

Action to recover a brokerage commission.

Without a jury Judge Exum heard this case upon the admissions and stipulations of the parties, documentary evidence, and the testimony of defendant, who was examined by plaintiff as an adverse witness. All the evidence supports the facts found by Judge Exum and stated in his judgment. These findings are set out in full in the opinion of the Court of Appeals, to which reference is made. The pertinent facts are summarized as follows:

In 1943 defendant and his wife, who is now dead, owned the property known as the Elwood Hotel in High Point. A part of the building was located on the right-of-way of the Southern Railway Company. As defendant's broker, on 31 July 1943 plaintiff's husband, W. F. Ross, a realtor, negotiated a fifty-year lease of the property to Arthur M. Lee. The stipulated rental was $18,000.00 annually for ten years from 1 September 1943; $20,000.00 for the next ten years; and $25,000.00 for the following thirty years. Lee's lease was made subject to a lease from the Railway Company to defendant.

After the execution of the lease to Lee, Ross submitted to defendant a proposed contract for the payment of his commissions, which defendant rejected. *Inter alia,* the proposal contained a provision which would have permitted defendant at any time to discharge his obligation to Ross in connection with the lease by paying him in cash 2½ percent of the unaccrued rental stipulated therein. The agreement reached between the two was contained in the body of the following letter, dated 20 September 1943, from defendant to Ross:

"Having read carefully the contract you gave me concerning the commissions and rent of the Elwood Property will say that I do not care to enter into any more contract than the one we have—i.e., that I am to pay you 5% of the rent received from Arthur Lea (sic) of William Street NYC, for acting as my agent in making this lease.

"Your check for five percent will be sent to you within five to fifteen days from the time I receive Mr. Lea's (sic) check—and I will continue to do this as long as the lease is in force. No longer; and there are no other obligations on either of us, regarding this particular matter."

Ross v. Perry

Ross is now dead, and plaintiff has succeeded to all his rights under the foregoing agreement. Defendant has paid to Ross and to plaintiff five percent of all rents which accrued between 1 September 1943 and 1 February 1967. On the latter date the Redevelopment Commission of the City of High Point condemned the Elwood Hotel property. The tenant under the lease gave up the occupancy, and the hotel was subsequently demolished. After 1 February 1967 defendant received no rent from the property. The total fair market value of the property was assessed in the Superior Court at $942,500.00. Of this sum defendant received 71% for his reversionary interest in the land; the tenant, 29% for his leasehold estate.

After 1 February 1967 defendant discontinued his monthly payments of $104.16 and disclaimed any further obligation to plaintiff. On 11 March 1969, alleging that she was entitled to recover "the present cash value of 5% of all unpaid rentals provided for in the lease between defendant and Lee," plaintiff instituted this action. Her prayer for relief was that she recover commissions at the rate of $104.16 per month from 1 February 1967 through 31 August 1993 ($33,217.04).

Judge Exum concluded as a matter of law: (1) The continued existence of the lease and the receipt of rentals under it were conditions precedent to defendant's obligation to pay commissions to plaintiff. (2) The condemnation of the hotel property terminated both the lease and plaintiff's right to receive commissions from defendant. (3) No part of the award of $942,500.00 was a payment of rentals under the lease. He entered judgment decreeing that defendant's obligation to plaintiff terminated as of 1 February 1967. Plaintiff appealed to the Court of Appeals, assigning as error the entry of judgment in favor of defendant. The Court of Appeals affirmed the judgment, one judge dissenting, and plaintiff appealed as a matter of right.

*McLendon, Brim, Brooks, Pierce & Daniels and E. Norman Graham and C. Allen Foster for plaintiff appellant.*

*Jordan, Wright, Nichols, Caffrey & Hill and William L. Stocks for defendant appellee.*

SHARP, Justice.

The question presented is: What effect did the unanticipated condemnation of defendant's property have upon the right of Ross' successor to continue to receive the commissions stipulated in defendant's letter of 20 September 1943 to Ross?

[1] The rule is that a real estate broker, employed by the owner to sell or lease designated property, is entitled to his commission when he negotiates a sale or lease within the terms of his authority; and his right is not affected if the principal voluntarily cancels the contract which the broker negotiated. *Bonn v. Summers*, 249 N.C. 357, 106 S.E. 2d 470 (1958); *House v. Abell*, 182 N.C. 619, 109 S.E. 877 (1921). Relying upon this rule, plaintiff contends that she is entitled to the commissions for which she has sued because "defendant, as lessor, and his lessee entered into a mutual cancellation of the lease." This contention, however, is without merit and finds no support in the record.

[2] The lease was terminated on 1 February 1967 when the City of High Point took the hotel property in condemnation proceedings. While it might reasonably be argued that all parties contemplated the possibility that the lease might terminate before its expiration date because of the hotel's encroachment on the Railroad right-of-way, plaintiff concedes that condemnation by the City was a contingency which neither defendant nor Ross envisioned on 20 September 1943. Notwithstanding, their agreement on that date specifically provided that defendant would pay Ross commissions only as long as the lease continued and rents were collected from the tenant.

The contract between defendant and Ross is too clear to permit interpretation. "If there be no dispute in respect to the terms of the contract, and they are plain and unambiguous, there is no room for construction. The contract is to be interpreted as written." *Jones v. Realty Co.*, 226 N.C. 303, 305, 37 S.E. 2d 906, 907 (1946). *Accord, Barham v. Davenport*, 247 N.C. 575, 101 S.E. 2d 367 (1957).

Defendant's agreement was not an unconditional promise to pay monthly commissions for fifty years on the rent stipulated in the lease. Ross' right to commissions was expressly conditioned upon (1) the tenant's payment of rent and (2) the continuation of the lease "in force." Therefore, in the absence

of a voluntary cancellation of the lease by defendant, or some arbitrary, capricious, unreasonable or wrongful act on his part, plaintiff's right to commissions ended with the termination of the lease on 1 February 1967. *See Jones v. Realty Co., supra; Segal Brokerage Co. v. Lloyd L. Hughes, Inc.,* 96 F. 2d 208 (9th Cir. 1938); *Dallas Dome Wyoming Oil Fields Co. v. Brooder,* 55 Wyo. 109, 97 P. 2d 311 (1940); *Lind v. Huene,* 205 Cal. 569, 271 P. 1087 (1928). See annot., 74 A.L.R. 2d 437 §§ 12, 19(a) (1960); 12 Am. Jur. 2d *Brokers* §§ 195, 199 (1964). Certainly, no voluntary or wrongful act by defendant put an end to the lease; defendant neither instigated the condemnation nor could he have prevented it.

Lest it be thought they were overlooked, we mention certain additional contentions and assertions made by plaintiff. Before doing so, however, we observe that they are without merit. Plaintiff contends that in the division of the compensation award the lessee received the value of his lease less the rents defendant would have received for the remaining 26 years and 7 months of the lease, and "thus the lease was 'in force' between the parties to the lease." Plaintiff asserts that defendant "not only received the benefit of the remaining rental payments due him under the lease but he received the benefit of the remaining 26½ years of rent telescoped into one lump sum." On this assumption she says she asks "only for the commuted value, and in a case where the lessor has received full payment for rents due to the end of the lease."

Plaintiff's assumption finds no support in the record or the law. The jury's verdict was a sum of money which could only be construed to represent the full and fair market value of the hotel property as of 1 February 1967.

[3] When an entire tract is taken for public use the owner is entitled to recover only the fair market value of the property. His award is the purchase price which the condemnor pays for the fee simple title to the land. In determining its fair market value the rental value, or income, of the property is merely one of the factors to be considered. Income from the property is material only insofar as it throws light upon its market value.

"When rental property is condemned the owner may not recover for lost rents, but rental value of property is competent upon the question of the fair market value of the property at

the time of the taking." *Kirkman v. Highway Commission*, 257 N.C. 428, 432, 126 S.E. 2d 107, 110 (1962). See 27 Am. Jur. 2d *Eminent Domain* § 433 (1966).

[4, 5] When condemned land is subject to a leasehold estate the tenant is entitled to share in the award since the value of his interest is a part of the value of the fee. See 27 Am. Jur. 2d *Eminent Domain* § 250 (1966) ; 29A C.J.S. *Eminent Domain* § 198 (1965). "As a consequence, the owner is required to account to his lessee for the value of his lease." *Durham v. Realty Co.*, 270 N.C. 631, 635, 155 S.E. 2d 231, 234 (1967). Ordinarily the value of a lease is the difference between the rental value of the unexpired term and the rent reserved in the lease—29A C.J.S. *Eminent Domain* § 143 (b) (1965). If a forfeited lease is worth nothing more than the stipulated rent, the lessee has sustained no damage. He suffers a loss only when his lease is worth more than the rent he pays, that is, only when his lease is a bargain. Thus, when the owner of the fee is required to divide a compensation award with the owner of the leasehold he is not receiving rent from the lease but is, in effect, paying a penalty for it.

[6] The record before us contains no explanation, or even a suggestion, of the method by which defendant and his lessee arrived at the value of the lease or the apportionment of the award between them. Nor does the record provide any clue as to what influence the lease may have had upon the evaluation of defendant's property in the condemnation proceeding. Wheth- the lease was in evidence, whether the tenant participated in the trial, whether stipulations were made, we do not know. However, in no view of this case can plaintiff base a claim for commissions upon defendant's award. It was not a payment of unaccrued rentals; it was the fair market value of the hotel property in cash, capital which had to be invested to earn income in lieu of the forfeited rents. Finally, defendant had agreed to pay commissions only as long as the lease remained in force and upon the rent paid by the tenant.

The decision of the Court of Appeals is

Affirmed.