DEALERS SPECIALTIES, INC., PLAINTIFF v. NEIGHBORHOOD HOUSING SERVICES, INC., DEFENDANT AND THIRD PARTY PLAINTIFF v. LONNIE AUTRY, THIRD PARTY DEFENDANT

No. 805DC1167

(Filed 6 October 1981)

1. **Frauds, Statute of § 5.1; Uniform Commercial Code § 8— oral promise to pay for goods sold to another—statute of frauds—summary judgment improper**

In this action to recover for goods sold by plaintiff to third party defendant, the trial court properly denied defendant's motion for summary judgment where plaintiff alleged that defendant's agent unconditionally promised to pay plaintiff for materials sold to third party defendant, and plaintiff's allegations and answers to interrogatories showed that there were disputed issues of fact as to whether defendant's oral promise to pay fell within the purview of G.S. 22-1 or G.S. 25-2-201(3)(c).

2. **Principal and Agent § 4.2— evidence of extrajudicial statements of agent**

In an action against the corporate defendant to recover for building materials sold by plaintiff to a contractor, testimony by plaintiff's president that defendant's assistant director requested that the materials be sold to the contractor and promised that the contractor would be paid with checks made payable to plaintiff and the contractor jointly and that a lien waiver would be required before final payment would be made to the contractor was admissible against defendant where the testimony of defendant's director established the

existence of a principal-agent relationship between defendant and its assistant director and showed that the assistant director had apparent authority to bind defendant to such an agreement.

### 3. Frauds, Statute of § 5.1— contract to pay for goods sold to another

The Statute of Frauds, G.S. 22-1, did not apply where defendant's agent requested that plaintiff sell building materials to a contractor and promised that the contractor would be paid with checks made payable to plaintiff and the contractor jointly and that a lien waiver would be required before final payment would be made to the contractor, since credit was extended to the contractor and the defendant jointly, and defendant's agent entered into an original obligation to pay plaintiff.

### 4. Uniform Commercial Code § 8— inapplicability of Statute of Frauds

The Statute of Frauds of G.S. 25-2-201 applies only to executory contracts and is inapplicable to defendant's oral promise to pay for building materials sold by plaintiff to a contractor where the contractor has already accepted the building materials.

Judge BECTON dissenting.

APPEAL by defendant Neighborhood Housing Services, Inc., from *Rice, Judge.* Judgment entered 29 September 1980 in District Court, NEW HANOVER County. Heard in the Court of Appeals 26 May 1981.

Plaintiff Dealers Specialties, Inc., brought this action against defendant seeking to recover $533 plus costs. Plaintiff alleged in its complaint the following:

2. On or about September 29, 1978, the defendant, for value received, through its employee, agent, and Assistant Director, Ron Conrad (sic) authorized the plaintiff to sell, on credit, certain building supplies, to Lonnie Autry, a building contractor.

3. On the aforesaid date the said Ron Conrad (sic), acting within the apparent and actual scope of his authority and in the furtherance of the defendant's business, made the direct and unconditional promise to the plaintiff that the defendant would pay said bill direct to the plaintiff.

4. The defendant's said agent specifically stated to the plaintiff as follows: "Mr. Autry will be paid in checks with two payees, himself, and your company as material supplier. Mr. Autry will have to show us a signed lien waiver before we will release his final money to him."

5. Said statement constituted, not a guaranty, but a direct and unconditional promise to pay.

6. Thereafter, in consideration of the aforesaid unconditional promise of payment and during the period September 29, 1978, to October 5, 1978, the plaintiff sold and delivered to the said Lonnie Autry goods which were reasonably worth the sum of Five Hundred Thirty Three and 00/100 ($533.00) Dollars, and timely notice thereof was given to the defendant. The plaintiff carries this account on his books as an open account.

7. The defendant has failed and refused and continues to fail and refuse, to pay the plaintiff such sum, or any part thereof, despite demand having been duly made by the plaintiff.

In its answer and amended answer defendant denied these allegations and alleged as defenses the failure of consideration and G.S. 22-1 and 25-2-201. These statutes define certain contracts which are required to be in writing. Defendant also filed a third party complaint against Autry demanding judgment against him for any sums adjudged against defendant.

During discovery plaintiff responded to interrogatories posed by defendant and indicated therein that there was no writing evidencing the agreement at issue but that invoices of the materials sold were sent to both defendant and Autry. Plaintiff further responded that Autry had ordered the materials and signed the sales slip acknowledging their receipt. In response to an interrogatory concerning the basis of Conrady's authority to bind defendant to an unconditional promise to pay for the materials plaintiff wrote:

10. Mr. Ron Conrad (sic) of the Neighborhood Housing Services, Inc. contacted our office on September 26, 1978, and asked us to sell the goods to Mr. Autry on account. Mr. Conrad (sic) stated that the payment for the account would come in the form of a check made payable to Mr. Lonnie Autry and Dealers Specialities (sic), Inc. jointly and that no final payment would be made to Mr. Autry on the contract until all accounts were paid and a lien waiver signed by each creditor.

Contact with Mr. Ron Conrad (sic) was initially made when he called our office by telephone and stated that he was a representative of Neighborhood Housing Services, Inc. When we later called Neighborhood Housing Services, Inc. and asked to talk to the person in charge of dispersing the funds, we were told that Mr. Ron Conrad (sic) was in charge.

The matter was heard before Judge Charles E. Rice, III, sitting without a jury. After considering testimony of plaintiff's president and defendant's director, Judge Rice ordered that plaintiff have judgment against the defendant for the sum of $533 plus costs. Defendant appeals.

*No counsel contra.*

*Ernest B. Fullwood for defendant-appellant.*

ARNOLD, Judge.

Defendant-appellant has brought forward all six of his assignments of error on appeal. Plaintiff-appellee has failed to respond to defendant's brief.

[1] Defendant first assigns error to the trial court's denial of its motion for summary judgment "on the grounds that there was no genuine issue of fact that Plaintiff's claim was upon a promise to answer the debt of another which was not in writing and upon the grounds that plaintiff's claim was based upon the sale of goods for the price of more than $500 which was not evidenced by any writing signed by the party to be charged." A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). The burden is on the moving party to establish the lack of a triable issue of fact, and the motion must be considered in the light most favorable to the party opposing summary judgment. *Baumann v. Smith*, 41 N.C. App. 223, 254 S.E. 2d 627, *rev'd on other grounds*, 298 N.C. 778, 260 S.E. 2d 626 (1979). We conclude that defendant has not met this burden. The bare denial of plaintiff's allegations and the raising of G.S. 25-2-201 and 22-1 do not prove plaintiff's claims to be non-existent or unfounded. Plaintiff clearly alleged that

defendant's agent unconditionally promised to pay plaintiff for materials sold to Autry. Plaintiff's answers to interrogatories also support a promise to pay. The Statute of Frauds, G.S. 22-1, requires that a promise to answer for the debt of another be in writing before any action may be brought against such promissor. Plaintiff's allegations and answers to interrogatories clearly show that there is a disputed issue of fact as to whether defendant's promise to pay falls within the purview of this statute.

There is also a disputed issue of fact as to whether the alleged agreement is unenforceable against defendant pursuant to G.S. 25-2-201. Plaintiff, in its complaint, alleged that in consideration of the unconditional promise to pay made by defendant's agent, the goods were sold and delivered to Autry. This allegation raises the specific issue as to whether the agreement falls under G.S. 25-2-201(3)(c). This section of the statute provides that an oral contract for the sale of goods for $500 or more is enforceable "with respect to goods for which payment has been made and accepted or which have been received and accepted."

The North Carolina courts have consistently held that their duty in hearing a motion for summary judgment is not to decide an issue of fact nor to test the sufficiency of the evidence. The trial court, therefore, properly denied defendant's motion for summary judgment.

[2] Defendant next assigns error to the admission of the testimony of Harry Rimel, president and general manager of plaintiff, on the basis that his testimony constituted hearsay. Rimel testified that in September, 1978, Lonnie Autry came to plaintiff's store and indicated he was working on a job for defendant and requested to buy building materials on account until he was paid for the job. Rimel refused to sell him any materials except on a cash basis. Rimel testified that about two days later he received a call from Mr. Ron Conrady. Following his conversation with Conrady, he later telephoned defendant and asked the woman who answered if he could speak with Conrady. Rimel then asked her if Conrady was "in charge of a job on Perry Street under Mr. Lonnie Autry as a contractor" and she responded that he was. Rimel then spoke with Conrady. On recall, Rimel was allowed to testify as to his initial telephone conversation with Conrady. He testified that several days after he refused to sell

Autry building materials on credit, Conrady telephoned him and identified himself as Assistant Director of Neighborhood Housing Services of Wilmington. Conrady told Rimel that defendant assisted homeowners in building and remodeling. He then asked Rimel to extend credit to Autry because Autry was remodeling a house for one of defendant's clients. Rimel further testified:

> Mr. Conrady told me that he would insure payment; that payment would not be made, that the final draw on the job, Sixth Street, could not be made by Mr. Autry until I had been paid and the check would be issued to me and Mr. Autry jointly; and that the lien waivers would have to be signed. He could (sic) make his final draw until I had been paid. I agreed to let Mr. Autry have the goods. . . .
>
> .    .    .    .
>
> The check would be joint with Mr. Autry. Based on that assurance, I extended the credit.

Defendant contends that this testimony is in direct conflict with the general rule that a declaration or admission of an alleged agent, while competent as against the agent, ordinarily is incompetent as against the principal when the declaration or admission of the agent is not within the scope of the agent's authority. 10 Strong's N.C. Index 3d, Principal and Agent, § 4.2, pp. 336-37. Defendant points out that the director of defendant testified that Conrady had no authority to contract with anyone. Defendant, however, has failed to consider the exceptions to this general rule.

> [O]rdinarily the extra-judicial statement or declaration of the alleged agent may not be given in evidence, unless (1) the fact of agency appears from other evidence, and also unless it be made to appear by other evidence that the making of such statement or declaration was (2) within the authority of the agent or, (3) as to persons dealing with the agent, within the apparent authority of the agent.

*Commercial Solvents v. Johnson*, 235 N.C. 237, 241, 69 S.E. 2d 716, 719 (1952). In the case *sub judice*, Henry Brown, defendant's director, testified that in September 1978 Conrady was employed by defendant as Assistant Director Rehabilitation Specialist. He further testified that Conrady's duties involved making initial in-

spections on properties to be rehabilitated and dealing with the general contractor and homeowner. Brown stated, "Mr. Conrady would make me aware of any problem and if there was anything that I could do or assist in getting that accomplished and then he and/or I would try to straighten the problem out . . . . When someone calls the office and asks to speak to the person who was in charge of coordinating the job or overseeing the job, I put them in contact with myself or Mr. Conrady." This testimony by defendant's director establishes the existence of a principal-agent relationship between defendant and Conrady. It further supports the trial court's finding that Conrady had apparent authority to bind defendant contractually as alleged. The North Carolina Supreme Court has noted that the apparent scope of an agent's authority

> "is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses; however, the determination of a principal's liability in any particular case must be determined by what authority the third person in the exercise of reasonable care was justified in believing that the principal had, under the circumstances, conferred upon the agent. [Citations omitted.]"

*Zimmerman v. Hogg & Allen*, 286 N.C. 24, 31, 209 S.E. 2d 795, 799 (1974). Plaintiff, in the case before us, acted reasonably in believing that Conrady as Assistant Director had the authority to contract with it. Since agency was established by other evidence, the declarations of Conrady were admissible. Furthermore, because plaintiff's complaint is based upon an original promise of defendant to pay for materials to be delivered to a contractor, and because such a promise does not come within the provisions of G.S. 22-1, any evidence in support of these allegations and pertinent to the issue was admissible. *See Pegram-West v. Insurance Co.*, 231 N.C. 277, 56 S.E. 2d 607 (1949).

In the second assignment of error defendant further argues that the trial court erroneously allowed Rimel to testify that he telephoned defendant's office and was told by an unknown person that Conrady was defendant's assistant director, and that he was in charge of a job on Perry Street. Again defendant emphasizes that this testimony was inadmissible as hearsay. In light of the

testimony given by defendant's director confirming this alleged hearsay evidence, there was no prejudicial error.

[3] Defendant contends that the trial court erred in denying its motion for dismissal made at the conclusion of plaintiff's evidence, because the evidence failed to show the existence of an original enforceable contract between the parties. Such a motion raises the question of whether any findings could be made from the evidence to support a recovery. The evidence must be viewed in the light most favorable to the plaintiff before ruling on such a motion. *Sanders v. Walker,* 39 N.C. App. 355, 250 S.E. 2d 84 (1979). Both the previously discussed testimony of plaintiff's president and of defendant's director presents evidence which, when viewed in the light most favorable to plaintiff, shows that defendant's agent promised to pay for goods delivered to Autry. Such a promise does not come within the Statute of Frauds.

Having earlier concluded that the testimony of Conrady's declarations to Rimel was admissible and that the relationship of principal and agent existed between defendant and Conrady, we must conclude that the court's findings of fact relative to these issues were based upon competent evidence.

Defendant assigns error to the court's conclusions that defendant contracted with plaintiff to pay for materials supplied to Autry on 29 September 1978, that the contract resulted from a direct promise to pay and was an original undertaking not within the Statute of Frauds, that the provisions of G.S. 25-2-201 do not apply and that defendant is indebted to plaintiff in the amount of $533. Defendant contends that the evidence showed no more than an oral promise by an alleged agent of defendant to answer to Autry's debt. We disagree. The evidence supports the trial court's conclusion that this was an original promise to pay plaintiff. An obligation is original if made at the time or before the debt is created and if credit is given in consideration of the promise made by the promissor. *Peele v. Powell,* 156 N.C. 553, 73 S.E. 234 (1911). In a 1950 Fourth Circuit Court of Appeals case, the Court upheld a District Court Judge's illustration concerning the difference between such an original promise and a collateral promise. *Goldsmith v. Erwin,* 183 F. 2d 432 (4th Cir. 1950). The Court stated that the following illustration was in accordance with decisions of the North Carolina Supreme Court:

"If a debt has already been made and the party is already bound under it, and a third party comes in and promises to pay it or to assume the responsibility for it, the third party isn't liable there, because the credit wasn't extended on the basis of that, and that is the promise to answer for the debt, default or miscarriage of somebody else, which has to be in writing before it can be enforced. But if the person who goes before the credit is extended and says to another 'If you will give this credit to thus and so I'll see that it is paid', that promise on his part to see that it is paid constitutes an original obligation on the person making the promise that 'If you do extend credit I will see it paid'; and whatever credit is extended by virtue of that becomes binding on him because his promise to see that it is paid makes him responsible for it."

183 F. 2d at 436. The latter situation described in this illustration mirrors the situation here. Plaintiff's evidence showed that the credit was extended to Autry and the defendant jointly. The trial court was correct in concluding that defendant's agent entered into an original obligation to pay plaintiff.

[4] The trial court was also correct in concluding that G.S. 25-2-201 was inapplicable to the facts. The evidence showed that plaintiff delivered the goods to Autry as requested by defendant's agent and in reliance upon the agent's promise to pay for the goods. The invoice shows that Autry accepted the goods as authorized by the terms of the agreement. Pursuant to G.S. 25-2-201(3)(c), this delivery and acceptance of the goods made the agreement between the parties enforceable since the Statute of Frauds applies only to executory and not to executed contracts.

The judgment appealed from is

Affirmed.

Judge VAUGHN concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

The majority correctly states that Neighborhood Housing Services, Inc.'s motion to dismiss "raises the question of whether any findings could be made from the evidence to support a recovery." The majority then concludes (1) that Neighborhood Housing Services, Inc. made a direct promise to pay for goods delivered to Autry, taking the transaction outside the Statute of Frauds, G.S. 22-1; and (2) that the Uniform Commercial Code's (U.C.C.) Statute of Frauds, G.S. 25-2-201, does not apply because the contract was executed in that there was a delivery and acceptance of the goods. I disagree; but before setting forth my reasons, I note that the trial court's Finding of Fact Number 10 that the promise was a "direct and unconditional promise to pay for [the] goods furnished" is a conclusion of law even though it is denominated a finding of fact, and it is reviewable by this Court. *Walston v. Burlington Industries*, 49 N.C. App. 301, 307, 271 S.E. 2d 516, 520 (1980); *Moore v. Electric Co.*, 259 N.C. 735, 131 S.E. 2d 356 (1963).

While I agree with the Court's holding that the oral communications between Ron Conrady, acting as agent for Neighborhood Housing Services, Inc., and Harry Rimel, president and general manager of Dealers Specialties, Inc., constituted an original, not a collateral, obligation, I disagree with the Court's holding that that oral agreement is enforceable against Neighborhood Housing Services, Inc. The promise between Neighborhood Housing Services, Inc. and Dealers Specialties, Inc. was a conditional promise, requiring performance by Neighborhood Housing Services, Inc. only upon the occurrence of certain events. Moreover, while I agree that G.S. 25-2-201(3)(c) exempts executed contracts from the Statute of Frauds provision of the U.C.C., I must respectfully disagree with its application to the facts of this case. The contract was executed only as to Lonnie Autry and that provision may be applicable to him. It is not, however, applicable to Neighborhood Housing Services, Inc. Neighborhood Housing Services, Inc. has neither received nor accepted any goods from Dealers Specialties. Lonnie Autry, whom Dealers Specialties does not allege to be an agent of Neighborhood Housing Services, Inc., was the party receiving and accepting the goods.

The agreement between Dealers Specialties and Neighborhood Housing Services, Inc. was that Dealers Specialties would

issue credit to Lonnie Autry in exchange for Neighborhood Housing Services, Inc.'s promise to issue the check for the "final draw on the job, Sixth Street," jointly to Dealers Specialties and Lonnie Autry, such draw only being available to Autry upon completion of the job to the satisfaction of Neighborhood Housing Services, Inc. *and* the homeowner *and* upon a presentation of lien waivers by Autry. Neighborhood Housing Services, Inc.'s promise was a conditional promise and its duty to perform did not arise until the conditions were met. *See Ross v. Perry*, 281 N.C. 570, 189 S.E. 2d 226 (1972); and *Jones v. Realty Co.*, 226 N.C. 303, 37 S.E. 2d 906 (1946). *Ross* and *Jones* both involved instances in which performance by the defendant was conditioned upon the actions of third parties. In *Ross* the broker could not receive commissions despite the fact that he had secured a tenant because the defendant's owner's duty to pay was conditioned upon the payment of rents and the continuation of the lease in full force. The taking of the property through condemnation proceedings relieved the defendant owner of the duty to pay because the conditions for performance had not occurred. Likewise, in *Jones*, the broker's receipt of commission for finding a ready, willing and able buyer was dependent upon a sale being closed. Because the potential purchaser was unable to come up with the money, the deal was not closed. Consequently, the defendant owners had no duty to pay the commission since the conditions were not met.

Similarly, in the case *sub judice*, Neighborhood Housing Services, Inc.'s performance was conditioned upon the happening of specified events. Since the specified events did not occur, Neighborhood Housing Services, Inc. is excused from performance. Neighborhood Housing Services, Inc. did not promise payment for the goods upon delivery to Autry. Mr. Rimel's testimony regarding his understanding of the agreement shows that he "did not understand that Neighborhood Housing Services, Inc. would pay [him] if Autry didn't." Further, Mr. Rimel, a merchant accustomed to building practices, testified that he understood that he was selling the goods to Lonnie Autry. Moreover, Rimel testified that he was told "by Conrady that Neighborhood Housing Services, Inc. had a policy of inspecting the jobs, that there has to be a certain percentage of work done in order for the contractor, to draw a percentage of the funds." Consequently, when Mr. Rimel entered into the agreement to deliver the goods, he took the risk

of not receiving his money until the job on Sixth Street had been completed to the satisfaction of Neighborhood Housing Services, Inc. *and* the homeowner, *and* until all lien waivers were presented. He also took the risk that the contractor (Autry) might not complete the job.

Neighborhood Housing Services, Inc. is an organization whose purpose is to assist homeowners in the improvement of their homes by financing and supervising renovations. Loans are made directly to the homeowners. Contractors are paid only upon the approval of the homeowner; the contractors submit bills to the homeowner and the homeowner in turn submits the bills to Neighborhood Housing Services, Inc.

As in this case, a loan could be used to hire more than one contractor. When Autry failed to complete the contract, the money remaining from the loan allocated to the project was used, along with other funds, to complete the project. It is true that Autry was paid for all of the work which he performed on the project through his termination point in November. The last check issued to him, however, did not constitute the final draw on the project, as the project was not completed and funds were left to be expended on it. Dealers Specialties took the risk, by the terms of the agreement, that the final draw would be made by someone other than Autry; it should not be heard to complain now.

Consequently, I believe the judgment appealed from should be

Reversed.