TRYON REALTY CO. OF NEW BERN, INC. v. L. H. HARDISON AND WIFE, FRANCES NELSON HARDISON; R. B. NELSON AND WIFE, RHUNELL G. NELSON; JOSEPH C. NELSON AND WIFE, MARY E. HOUSE NELSON; H. W. BROUGHTON AND WIFE, MARTHA NELSON BROUGHTON; JOHN C. COUGHLAN AND WIFE, MARGARET NELSON COUGHLAN; AND J. C. GALLOWAY AND WIFE, CHRISTINE NELSON GALLOWAY

No. 823SC652

(Filed 7 June 1983)

**Brokers and Factors § 6— realty contract—no condition on realtor's right to commission**

Language in a realty agreement did not make the realtor's right to a commission contingent upon delivery of the deed and payment of a down payment. Rather, the agreement was a general contract and the language in question referred merely to the time and manner of the payment of the commission.

APPEAL by plaintiff from *Rouse, Judge.* Judgment entered 8 April 1982 in Superior Court, CRAVEN County. Heard in the Court of Appeals 9 May 1983.

This is a civil action wherein plaintiff seeks to recover a broker's commission pursuant to the terms of an agreement between plaintiff as broker and defendants as sellers entered into on 31 August 1978. The agreement is as follows:

THIS CONTRACT AND AGREEMENT, Made and entered into this 31st day of August, 1978 by and between Joseph C. Nelson and wife, Mary E. House Nelson of Craven County, North Carolina; Martha N. Broughton and husband, H. W. Broughton of Nash County, North Carolina; R. B. Nelson and wife, Rhunell G. Nelson; Christine N. Galloway and husband, J. C. Galloway; and John C. Coughlan and wife, Margaret N. Coughlan, all of Pitt County, North Carolina; and Frances N. Hardison and husband, L. H. Hardison of Martin County, North Carolina, parties of the first part, hereinafter referred to as "OWNERS" and Tryon Realty Company of New Bern, North Carolina, party of the second part.

WITNESSETH: That whereas, parties of the first part are the owners of a tract of woodsland known as the Nelson Estate Woodsland in No. 1 Township, Craven County, North Carolina, containing 3000 acres more or less. The said parties of the first part in consideration of the sum hereinafter set

out do hereby give and grant to Tryon Realty Company, party of the second part, the exclusive right for a period of six months from the date of this agreement to sell said tract of woodsland in fee simple upon the following terms and conditions:

*FIRST:* The gross sale price shall be ONE MILLION, THREE HUNDRED, THIRTY-THREE THOUSAND, THREE HUNDRED, FORTY-FIVE AND NO/100 ($1,333,345.00) DOLLARS, twenty-eight percent of which shall be paid in cash upon delivery of the deed, and the balance in ten equal annual installments with interest at 7-1/2 percent per annum payable annually on the unpaid balance. The party of the second part shall receive as commissions in connection with the sale of the land ten percent of the gross sale price which shall be paid in full from the twenty-eight percent down payment upon delivery of the deed.

*SECOND:* If the property is not sold by party of the second part within six months from the date of this agreement, then this agreement shall become null and void and the parties of the first part as owners shall not be responsible to pay party of the second part any amount, and the owners may dispose of the property as they see fit without regard to this agreement.

*THIRD:* It is further understood and agreed that the party of the second part as selling agency for the parties of the first part has no authority and shall make no representations to any prospective purchaser as to the quantity or quality of the land being sold or the uses to which the same might be put.

*FOURTH:* It is further understood and agreed that if the property is sold it will be conveyed subject to any and all easements of record in the Public Registry of Craven County, subject to all highway and roadway rights of way, and the taxes for the year in which a sale may be consummated will be prorated between the sellers and the purchaser as of the date of such conveyance.

*FIFTH:* It is further understood and agreed that the unpaid balance of the purchase price over and above the 28 per-

cent down payment shall be represented by a note secured by a purchase money deed of trust, which said deed of trust shall contain the usual and standard provisions found in North Carolina mortgages and deeds of trust.

*SIXTH:* All earnest money or option money deposited by any prospective purchaser with the party of the second part as selling agency shall be held by the party of the second part in escrow until the termination of the transaction. In the event the prospective purchaser forfeits the earnest money or option money and does not purchase said property, then the earnest money or option money shall be divided one-half to the selling agency, party of the second part, and one-half to the sellers, parties of the first part.

WITNESS our hands and seals.

In its complaint, plaintiff alleged that, on or about 2 July 1979, plaintiff found a purchaser who was ready, willing and able to purchase the defendants' property on the terms specified by the defendants. Plaintiff further alleged that defendants, in July of 1979, accepted the offer to purchase submitted by plaintiff for the purchaser, subject to several minor changes. On 1 August 1979, the purchaser agreed to the terms of the defendants along with the minor changes. On 5 September 1979, defendants and purchaser executed a Memorandum to Buy and Sell. The purchaser deposited with plaintiff $50,000 in earnest money to be held in escrow by plaintiff. Plaintiff alleged that subsequent to 5 September 1979, defendants refused to sell and convey this property to the purchaser, that plaintiff has demanded payment of the broker's commission according to the terms of the 31 August 1978 agreement, and that defendants refused to pay the agreed commission.

In their answer, defendants admitted the 31 August 1978 agreement with plaintiff and admitted the Memorandum to Buy and Sell, executed by the defendants and the purchaser on 5 September 1979. Defendants admitted that they failed to pay plaintiff the broker's commission as per the agreement of 31 August 1978. Defendants denied that plaintiff had found a purchaser on the terms specified by defendants. Defendants further alleged that the agreement of 31 August 1978 contained a special condition that made payment of the broker's commission con-

tingent upon payment in cash by the purchaser of twenty-eight percent of the purchase price.

At trial, plaintiff offered as Exhibit No. 1 the Agreement of 31 August 1978 between plaintiff and defendants; as Exhibit No. 4, an extension of that agreement and all of its terms, dated 1 March 1979; and, as Exhibit No. 5, the Memorandum to Buy and Sell, executed by defendants and purchaser on 5 September 1979.

Evidence put on by plaintiff at trial tends to support his allegations that a purchaser had been found by plaintiff who was ready, willing, and able to purchase defendants' property on the terms specified by defendants. Plaintiff's expert witness, attorney James Lee Davis, testified that in his opinion, "the defendants in the lawsuit could not convey fee simple unencumbered, marketable title of record to the property in question, to all of the property in question, subject only to ad valorem taxes." Plaintiff's evidence also tends to support his allegation that defendants have refused to sell or convey the property, that plaintiff had demanded payment of the broker's commission by defendants, as per the 31 August 1978 agreement, and that plaintiff's demand had been refused by defendants.

Defendants' motion for a directed verdict made at the close of plaintiff's evidence was allowed. From a judgment directing a verdict for defendants, plaintiff appealed.

*Sumrell, Sugg & Carmichael, by Fred M. Carmichael and Rudolph A. Ashton, III for plaintiff, appellant.*

*Gaylord, Singleton, McNally & Strickland, by Louis W. Gaylord, Jr. and Danny D. McNally, and Lee, Hancock, Lasitter & King, by C. E. Hancock, Jr. and John W. King, Jr. for defendants, appellees.*

HEDRICK, Judge.

The question presented by this appeal is whether the trial court erred in granting the defendants' motion for a directed verdict.

Plaintiff argues that it offered evidence at trial that tended to show that it complied fully with the terms of the 31 August 1978 agreement (hereinafter referred to as the Agreement) in

that it produced a purchaser who was ready, willing and able to purchase defendants' property according to the terms specified by defendants, that the sale was not consummated because defendants could not produce good title, and that plaintiff is therefore entitled to recover the commission specified in the Agreement.

Defendants argue that plaintiff's evidence shows as a matter of law that it did not comply with the terms of the Agreement in that the sale of defendants' property was never consummated and there was therefore no twenty-eight percent down payment by the purchaser from which plaintiff's commission could be paid.

It is well established in North Carolina that when a broker, pursuant to an agreement with the owner of certain real property, procures a purchaser for that property who is ready, willing and able to buy the property upon the terms offered, he is entitled to his commission. *Carver v. Britt*, 241 N.C. 538, 85 S.E. 2d 888 (1955). The right of the broker to his commission is not affected if the principal voluntarily cancels the contract that the broker negotiated, *Ross v. Perry*, 281 N.C. 570, 189 S.E. 2d 226 (1972), or is unable to fulfill the terms on his part or produce good title, or if the sale fails of consummation upon the fault of the seller. *Crowell v. Parker*, 171 N.C. 392, 88 S.E. 497 (1916).

When the broker's right to his commission is made to depend upon the satisfaction of any condition other than his production of a ready, willing and able purchaser, North Carolina courts require that such a variation from the general rule be clearly expressed. *Ross v. Perry*, 281 N.C. 570, 189 S.E. 2d 226 (1972); *Jones v. Realty Co.*, 226 N.C. 303, 37 S.E. 2d 906 (1946).

It is important in such situations that a distinction be made between language that imposes a condition which goes to the substance of a contract and language which relates only to its ultimate performance. *Carver v. Britt*, 241 N.C. 538, 85 S.E. 2d 888 (1955); *Harrison v. Brown*, 222 N.C. 610, 24 S.E. 2d 470 (1943).

In the present case, defendants assert that the Agreement with plaintiff was a special brokerage contract in that it contained provisions requiring payment of the commission only upon delivery of the deed and that this payment was to come from the down payment of twenty-eight percent of the purchase price to be

received from the purchaser. Defendants contend that the language in the Agreement makes plaintiff's right to the commission contingent upon delivery of the deed and payment of the down payment.

In support of their contention, defendants cite us to the case of *Jones v. Realty Co.*, 226 N.C. 303, 37 S.E. 2d 906 (1946), wherein the Supreme Court affirmed the trial court's judgment of nonsuit, denying a broker's right to his commission. However, we find *Jones* to be clearly distinguishable. There, the court held that the trial court's judgment was grounded on a special contract, prepared by the broker, where the sale failed because of the inability of the purchaser procured by the broker to complete it.

The *Jones* court noted that the case before it was "not like the usual broker's action where a responsible purchaser is procured by [the broker's] efforts under a general contract, express or implied." *Id.* at 305, 37 S.E. 2d at 907 (citations omitted). In that case, the court based its finding of a special contract on the language of a letter, found to be a part of the contract, which read, "When the deal is closed up we will pay Frank F. Jones his commission of 5% . . . out of the sale price of the property." *Id.* at 304, 37 S.E. 2d at 907. The *Jones* court found that this language was clear enough to leave no question as to the intention of the parties to impose a condition on the broker's right to his commission and thereby create a special contract. 226 N.C. 303, 37 S.E. 2d 906.

The *Jones* case is further distinguishable from the case before us. There it was the purchaser procured by the broker and not the seller, as in this case, whose inability to comply with the contract caused the sale to fail.

We find that the Agreement in the present case is a general contract. The language upon which defendants base their contention does not condition plaintiff's right to his commission. Rather, we find that the language in question goes merely to the time and manner of the payment of the commission.

We therefore hold that the evidence, when considered in the light most favorable to plaintiff, is sufficient to require submission of the case to the jury and that the trial court erred in directing a verdict for the defendants.

Reversed and remanded.

Chief Judge VAUGHN and Judge EAGLES concur.