## A. G. CARVER, AGENT, v. ARTHUR W. BRITT.

(Filed 2 March, 1955.)

**1. Brokers § 3: Frauds, Statute of, § 9—**

A contract between a broker and an owner of land to negotiate a sale of the land is not required to be in writing.

**2. Contracts § 4—**

While the acceptance of an offer must be identical and unconditional, where an offer is squarely accepted in positive terms, the addition of a statement relating to the ultimate performance of the contract does not make the acceptance conditional and prevent the formation of the contract.

**3. Brokers § 3—**

Defendant listed his land for sale with plaintiff broker at a specified price. Thereafter, plaintiff sent defendant a telegram stating that a purchaser for the price agreed had been obtained, and defendant sent a return wire stating "your telegram relative sale my property is accepted subject to details to be worked out . . ." *Held:* The words "subject to details to be worked out" referred not to the acceptance of the offer but to the performance of the contract and does not render the acceptance conditional, and therefore, in the broker's action for commission, nonsuit on the ground that there was no evidence of a valid contract to sell is error.

**4. Contracts § 4—**

Where an offer stipulates that acceptance must be wired by a specified hour, but the offerer, notwithstanding the offeree's failure to wire acceptance within the time stipulated, goes to the office of the offeree's attorney to complete the transaction in accordance with acceptance later received, the offerer waives the time limit, and the offeree may not maintain there was no contract because the offer was conditional.

**5. Brokers § 11—**

The fact that a brokerage contract stipulates that the broker was to be paid commission on the total price obtained from the property does not preclude recovery of commission by the broker upon his obtaining a purchaser ready, able, and willing to buy the property at the stipulated price when the sale is not consummated because of fault of the owner of the land.

APPEAL by plaintiff from *Moore, Dan K., J.,* December Civil Term 1954, of BUNCOMBE.

Civil action by broker to recover commissions for procuring purchaser ready, able and willing to buy land on terms allegedly authorized and accepted.

Plaintiff's evidence tends to show the facts stated below. The plaintiff is a licensed real estate broker in the City of Asheville. The defendant is a resident of the State of Kentucky. The defendant owned approximately 55 acres of land in Buncombe County, which is all the land de-

scribed in Deed Book 463, page 173, in the office of the Register of Deeds of Buncombe County, except 13.1 acres owned by Vincente Vallejo.

On 24 September 1952 plaintiff had a conversation with the defendant in Asheville. He told the defendant he thought he could sell his property, if he would give him a listing. Defendant said it was for sale, and he wanted to sell it. DeDfendant gave plaintiff a listing on it for $22,000.00, and said: "He would have to let Mr. Vallejo have refusal on it if he let me have it." Plaintiff told defendant his prospective purchaser would be in Asheville the next day, he would have to know quick; and how soon defendant could let him know whether Mr. Vallejo would take it? Defendant replied, "I will let you know within eight hours from the time you wire." Defendant asked plaintiff what he would charge, and he replied 5% of the selling price. Nothing else was said about the commissions.

On 25 September 1952 plaintiff showed this property to the International Resistance Corporation, and obtained it as a purchaser ready, able and willing to buy at the price of $22,000.00—of which $5,000.00 was paid to plaintiff then and $17,000.00 to be paid when the transaction was closed.

On the same day plaintiff sent defendant a telegram reading as follows:

"I have sold property northeast corner of Sweeten Creek Road and Airport Road described in Deed Book 463, page 173, excepting 13.1 acres sold Vallejo: About 55 acres $22,000 cash. Have $5,000 deposited. Balance $17,000 on closing date. To be closed on or before sixty days. Deed to purchaser to be good, marketable title free and clear. Must have answer by Western Union not later than 8:00 p.m. today or they will purchase other property."

Not hearing from defendant by 8:00 p.m. plaintiff called him by telephone, reaching him about 5:00 o'clock the following morning in Louisville, Kentucky. Plaintiff told defendant he had his property sold. Defendant replied, "Well, Mr. Vallejo was out and we had the property." Plaintiff said, "Mr. Britt, these people are here from Philadelphia, and want to go back this afternoon. They don't want to take our word and I want you to wire me accepting that offer immediately." Defendant agreed to wire. This is the telegram defendant sent plaintiff:

"Your telegram relative sale my property is accepted subject to details to be worked out by you and T. O. Pangle. Many thanks."

After receiving the wire plaintiff notified the International Resistance Corporation it had bought the property. On the day of receipt of defendant's telegram, or the day after, plaintiff went to T. O. Pangle's office, who is one of the defendant's counsel of record. Pangle told plaintiff "we had the property, that Mr. Vallejo was out." Pangle said he wanted to wait until the first of the year to close the property out. Plaintiff

replied his purchaser wanted to close the deal immediately, and asked him to call the defendant. Pangle got defendant over the telephone and plaintiff talked to him, saying it made no difference about the income tax whether the transaction was closed now or the first of the year. Defendant told plaintiff "he would come down tomorrow and we would straighten things out." The next day defendant sold the property to Vallejo, and conveyed it to him by deed on 3 October 1952. The consideration exceeded $22,000.00.

Defendant has made no payment of commissions to plaintiff.

From judgment of nonsuit entered at the close of plaintiff's evidence, the plaintiff appeals assigning error.

*Harkins, Van Winkle, Walton & Buck for Plaintiff, Appellant.*
*Pangle & Garrison and Don C. Young for Defendant, Appellee.*

PARKER, J. A mere contract between a broker and the owner of land to negotiate a sale of the latter's land is not required to be in writing. *White v. Pleasants,* 225 N.C. 760, 36 S.E. 2d 227; *Palmer v. Lowder,* 167 N.C. 331, 83 S.E. 464; 8 Am. Jur., Brokers, Secs. 22 and 62; 12 C.J.S., Brokers, Sec. 62.

Plaintiff's evidence tends to show that the defendant listed his land with him for sale at the price of $22,000.00, and that pursuant to his contract with the defendant he secured a purchaser ready, able and willing to buy at that price. That he telegraphed the defendant he had sold the property for $22,000.00, and that the defendant telegraphed him back, "your telegram relative sale my property is accepted subject to details to be worked out by you and T. O. Pangle."

The defendant contends that his telegram of acceptance was conditional upon the working out of the details, and as these were never worked out, he never accepted the offer, and, therefore, is not liable to plaintiff for commissions.

It seems that the contention of the defendant arises out of his failure to distinguish between a condition which goes to the making of a contract and a statement relating only to its ultimate performance or execution.

Where an offer is squarely accepted in positive terms, the addition of a statement relating to the ultimate performance of the contract does not make the acceptance conditional and prevent the formation of the contract. *Rucker v. Sanders,* 182 N.C. 607, 109 S.E. 857; *Townsend v. Stick,* 158 F. 2d 142; *Turner v. McCormick,* 56 W. Va. 161, pp. 170-171; *Grey v. Nickey Bros.,* 271 F. 249; *Baker v. Packard,* 98 N.Y.S. 804, 112 App. Div. 543, affirmed 82 N.E. 1124, 189 N.Y. 524; Anno. 149 A.L.R. 214 (d); Williston on Contracts, Rev. Ed., Vol. 1, Sec. 78.

It is said in 17 C.J.S., Contracts, p. 384: "If an offer is accepted as made, the acceptance is not conditional and does not vary from the offer because of inquiries whether the offerer will change his terms, or as to future acts, or by the expression of a hope, or suggestion as to terms, or by the intimation that a time be fixed for the consummation of the transaction, or because the offerer otherwise expresses dissatisfaction with the offer or adds immaterial words which do not in legal effect qualify the offer . . ."

In *Townsend v. Stick, supra,* which was an action for specific performance, the appellant contended that the acceptance was not enforceable because these essential elements of a contract were still under negotiation: (a) The Nature of the Final Agreement; (b) The Manner of Reserving Oil and Mineral Rights; (c) The Purchase Price; (d) The Time, Place and Amount of Payment; (e) The Time Allowable for a Survey, a Title Examination and Removal of Title Defects; (f) The Quantity of Land to be Sold; (g) The Character of the Title to be Guaranteed; and (h) The Identity of the Purchaser. The Court said: "We have examined these contentions closely and are convinced that they are either matters of performance rather than matters involved in the formation of the contract, or that they are substantially covered by the contract or would be implied by law."

It is elementary learning that an acceptance to be enforceable must be identical with the offer and unconditional. 17 C.J.S., Contracts, Sec. 43. In order for the words "subject to details to be worked out by you and T. O. Pangle" to invalidate the contract, these words must amount to a qualification or condition imposed as a part of the acceptance itself, and defendant's telegram must be construed as a qualified acceptance to the effect that "I will accept your offer, provided the details are worked out." *Rucker v. Sanders, supra.*

The looking up of a title, the drafting and execution of a deed, the time and place of payment of the purchase price are customary details in working out a real estate conveyance. The defendant's acceptance of the offer was positive. How can a statement relating not to the making of the contract, but merely to the working out of the details of performance be deemed to change it?

The defendant further contends that the offer was conditional because it stated "must have answer by Western Union not later than 8:00 p.m. today or they will purchase other property," and no answer was received from defendant within the time limit. This contention seems without merit: the purchaser apparently waived the time limit of acceptance, as plaintiff went to Pangle's office to complete the transaction.

We are satisfied that the words as to the working out of the details relate to the performance of the contract, and that the telegrams contain

all of the essential elements of a valid contract. The case of *Richardson v. Storage Co.,* 223 N.C. 344, 26 S.E. 2d 897, 149 A.L.R. 201, relied on by the defendant, is distinguishable.

The defendant makes this additional contention: the plaintiff alleged in his complaint that he was to be paid 5% commissions on the total price obtained for the property, and as his purchaser never paid the sale price, no commissions are due. Defendant relies upon *Jones v. Realty Co.,* 226 N.C. 303, 37 S.E. 2d 906. That case is not in point. There the plaintiff was to be paid a 5% commission "out of the sale price of the property." A recovery was denied because the purchaser was unable to comply with his contract. The plaintiff had not procured a purchaser able to buy.

"As a general rule, where a broker finds a customer ready, able and willing to enter into a transaction on the terms proposed by the principal, he cannot, unless there is a special contract to the contrary, be deprived of his right to his commissions by reason of the transaction failing on account of some fault of the principal." 12 C.J.S., Brokers, p. 221, where cases are cited from many states.

We said in *House v. Abell,* 182 N.C. 619, 109 S.E. 877: "It is a well established principle that a real estate broker employed by the owner to make sale of designated real estate, who, within the terms of the authority given, succeeds in bringing about a building (*sic*) contract of sale with a responsible purchaser, is entitled to his stipulated commission, or to the reasonable worth of his services if no definite amount is specified, and his claim therefor is not affected because the principal has seen proper to voluntarily surrender his rights under the contract."

The law is well settled in this jurisdiction that when a broker, pursuant to an agreement with the owner of land, procures a purchaser for his principal's land ready, able and willing to buy the land upon the terms offered, he is entitled to commissions or compensation for his services. *Eller v. Fletcher,* 227 N.C. 345, 42 S.E. 2d 217; *White v. Pleasants, supra; Lindsey v. Speight,* 224 N.C. 453, 31 S.E. 2d 371.

Plaintiff's evidence is to the effect that it was defendant's fault that he did not receive the purchase price of $22,000.00 from the International Resistance Corporation. The defendant cannot resist plaintiff's recovery on the ground of non-receipt of the purchase price under such circumstances.

The Complaint alleges a brokerage contract between plaintiff and defendant, and that plaintiff was to receive 5% commissions on the sale price of the property. The Complaint does not allege the price at which the property was listed with plaintiff for sale. The only mention of the sale price in the Complaint is in the telegram sent by plaintiff to defendant, which telegram, with defendant's telegram in reply, is set forth verbatim. The plaintiff does not allege an oral acceptance of the offer.

Therefore, he must rely upon defendant's telegram as an acceptance. The defendant in his answer denies the making of the sale contract, but admits the receiving and sending of the telegrams.

In our opinion, plaintiff's evidence tends to show a substantial agreement between the offer and acceptance in all material particulars sufficient to show a mutual intent between the parties directed to the purpose of conveying the land, *Richardson v. Storage Co., supra,* and the parties appear to have assented to the same thing in the same sense, *Trollinger v. Fleer,* 157 N.C. 81, 72 S.E. 795.

Plaintiff's evidence makes out a case for the jury, and it is ordered that the judgment below be

Reversed.