ALLMAN v. CHARLES

[111 N.C. App. 673 (1993)]

---

L. P. "BUCK" ALLMAN, D/B/A BUCK ALLMAN REALTORS v. ALICE CHARLES

No. 9226DC583

(Filed 17 August 1993)

**Brokers and Factors § 31 (NCI4th)— sale of home—refusal of seller to make repairs—buyers' termination of conditional contract— broker not entitled to commission**

Plaintiff real estate broker could not collect a commission where he procured a buyer at a price acceptable to the seller, the seller refused to make repairs after the buyer's inspection, and the buyer terminated the agreement, since the contract between defendant and the buyer was conditional and, until the issue of repairs was resolved, it was not binding on the parties; defendant made no implied promise to make a good

faith effort to negotiate as to repairs; and defendant did not breach her duty to cooperate as contained in her exclusive listing contract with plaintiff where she reduced the asking price by more than $10,000, opened her house to buyers and later to their inspectors, signed the contract, and, when she realized she was bound by it, placed her belongings in storage and took an apartment.

**Am Jur 2d, Brokers § 199 et seq.**

Appeal by defendant from judgment entered 14 January 1992 by Judge L. Stanley Brown in Mecklenburg County District Court. Heard in the Court of Appeals 27 April 1993.

*Blair, Conaway, Bograd & Martin, by Bentford E. Martin and Brien D. Stockman, for plaintiff.*

*Glover & Petersen, P.A., by James R. Glover, for defendant.*

McCRODDEN, Judge.

Plaintiff brought this action to recover a real estate commission fee of six percent of the $182,500.00 contract price defendant agreed to accept for the sale of her home. Defendant appeals from the judgment finding that plaintiff had found a buyer ready, willing and able to purchase defendant's house and ordering defendant to pay a real estate broker's commission as required by the Exclusive Listing Contract. The issue we determine is whether a real estate broker may collect a commission when he procures a buyer at a price acceptable to the seller, the seller refuses to do any repairs after the buyer's inspection, and the buyer terminates the agreement.

The facts of the case are as follows. On 15 May 1990, defendant engaged plaintiff as her exclusive agent to sell her home. Plaintiff and defendant signed an Exclusive Listing Contract which provided that the house was to be listed at a price of $194,900.00 and that defendant would pay plaintiff six percent of the gross sales price if plaintiff produced a purchaser within the exclusive listing period. The listing contract also contained a provision requiring defendant to cooperate with plaintiff to facilitate the sale of the house. About this time, plaintiff informed defendant that it was quite possible that she would have to make some repairs to the house in order to sell it. Defendant stated that the only defects of which she

was aware were a faulty element in the stove, the garbage disposal, and the chimney flue.

On 28 May 1990, plaintiff procured an offer to purchase in the amount of $170,000.00 by Mr. and Mrs. Thomas Koechlin. Plaintiff and defendant formulated a counter-proposal and presented the Koechlins with a written offer to sell and contract (the Contract) for a sale price of $182,500.00, with the closing to be held before 20 June 1990. The Koechlins accepted the offer and executed the Contract.

Soon after the Contract was executed, defendant decided that she no longer wished to sell the house. She offered to pay plaintiff his commission and to pay the Koechlins $10,000.00 to be released from her obligation. The Koechlins, however, wanted to go through with the sale. Defendant then consulted an attorney who advised her that the Contract was binding.

Subsequently, defendant and the Koechlins entered into a written agreement modifying the Contract, but these modifications do not directly bear on the issues presented by this case.

Paragraph 8 of the Contract provided that the electrical, plumbing, heating, and cooling systems were to be in good working order at the time of closing and that the buyer had the right to have these systems inspected, at the buyer's expense, and that:

> [I]f any repairs are necessary, Seller shall have the option of (a) completing them, (b) providing for their completion, or (c) refusing to complete them. If Seller elects not to complete or provide for the completion of the repairs, then Buyer shall have the option of (d) accepting the property in its present condition, or (e) terminating this contract.

Pursuant to this provision of the Contract, the Koechlins had professional inspections made of the plumbing, electrical, structural and heating systems of the house. These inspections indicated that some repairs needed to be made to the house. The combined total of the estimated costs for the repairs was approximately $4,900.00.

After receiving these inspection reports, defendant informed plaintiff that she would not make any repairs, insisting that she would "not pay one dime" toward repairs. Instead of accepting the property as it was or making a compromise offer to share the cost of repairs, the Koechlins exercised their right to terminate

the Contract. The sale did not close and defendant released the Koechlins' earnest money.

---

Defendant first argues that the trial court erred in finding that the Koechlins were ready, willing and able purchasers. She contends that Paragraph 8 rendered the Contract conditional and neither the buyer nor the seller was willing to meet the condition.

The general rule is that when a broker produces a buyer who is ready, willing and able to buy the principal's land upon the terms offered by the principal, the broker is entitled to his commission. *Carver v. Britt*, 241 N.C. 538, 85 S.E.2d 888 (1955). Merely negotiating a conditional agreement, however, does not entitle a broker to a commission. 12 C.J.S. *Brokers* § 149 (1980); 12 Am. Jur. 2d *Brokers* § 188 (1964).

In *Carver v. Britt*, the defendant claimed that the plaintiff broker was not entitled to a commission because the acceptance message sent by the defendant had stated, "your telegram relative sale my property is accepted subject to details to be worked out . . . ." 241 N.C. at 540, 85 S.E.2d at 889. In finding that the acceptance was not conditional, the Court distinguished between conditions going to the making of the contract and those which merely affect the execution of the contract. "Where an offer is squarely accepted in positive terms, the addition of a statement relating to the ultimate performance of the contract does not make the acceptance conditional and prevent the formation of the contract." *Id.* at 540, 85 S.E.2d at 890. On the other hand, a qualification "imposed as a part of the acceptance itself" would invalidate the contract. *Id.* at 541, 85 S.E.2d at 890.

In the instant case, the continuing validity of the Contract was conditioned on defendant's making any necessary repairs or the Koechlins' acceptance of the property as it was. We believe that a provision such as that contained in Paragraph 8 of the Contract, allowing a seller to refuse to make repairs to the property and the purchaser then to terminate the contract, was not a mere detail of execution, but went to the making of the contract. When a buyer and seller cannot work out these conditions of the contract, as the Koechlins and defendant were unable to do in this case, they invalidate the contract. Hence, we find that this contract was conditional and that, until the issue of repairs was resolved, it was not binding on the parties.

Defendant also disputes the trial court's other ground for award-ing fees to the plaintiff. In its second conclusion of law, the court found that

[I]n refusing to even consider bargaining or negotiating with the Koechlins over the issue of repairs to the property and in adamantly refusing to spend "even one dime" on any repairs to the property after earlier acknowledging that at least some repairs would be required, *the Defendant did not comply with her duty of good faith and fair dealing in attempting to resolve the issue of repairs.* The sale of Defendant's house to the Koechlins was not closed as a consequence of the Defendant's failure to act in good faith or to make reasonable efforts to resolve the issue of repairs. The Defendant's failure to act in good faith also constituted a violation of her duties to the Plaintiff under the Exclusive Listing Contract.

In support of the trial court's conclusion, plaintiff contends that the condition in Paragraph 8, like a condition of obtaining financing, carries with it an implied duty of good faith, citing *Mezzanotte v. Freeland*, 20 N.C. App. 11, 200 S.E.2d 410 (1973). In *Mezzanotte*, the sales agreement contained a provision stating that the agree-ment was contingent upon the buyer's obtaining satisfactory financ-ing. The court found that even though the buyer had discretionary power affecting the seller's rights, the buyer's promise to purchase was not illusory because he had impliedly promised to make reasonable efforts to obtain financing. *Mezzanotte*, however, is distinguishable.

In this case, defendant made no promise, implicit or explicit, to make repairs, and the Contract imposed no such duty. Further, she did not have discretionary power to affect unilaterally the Koechlins' rights. The Contract gave defendant the right to refuse to make repairs, but the Koechlins could still have enforced the contract against her had they been willing to accept the property as it was. Neither party could unilaterally terminate the Contract. There was no implied promise to make a good faith effort to negotiate as to repairs.

Plaintiff, mindful of defendant's earlier attempt to terminate the Contract, believes that defendant's refusal to negotiate on the issue of repairs was her way of getting out of the Contract. It matters not what defendant's intentions were. *Thompson-McLean,*

*Inc. v. Campbell*, 261 N.C. 310, 134 S.E.2d 671 (1964). Defendant was not legally bound to pay for repairs or to negotiate that condition.

Plaintiff finally argues that, by refusing to make repairs or negotiate the repairs, defendant breached her duty to cooperate, as contained in the Exclusive Listing Contract and that this fact alone is sufficient to support the judgment. However, once defendant signed the Contract, her duties under the Contract delimited her duty to cooperate under the Exclusive Listing Contract, *i.e.*, her duty to cooperate was no more expansive than her general duty to abide by the terms of the Contract. The trial court, misunderstanding the nature of the Contract, erroneously found that there was a general duty of good faith with respect to repairs. As stated above, there was no such duty.

Without that erroneously imposed duty, we find the evidence that defendant breached her duty to cooperate insufficient. In fact, the evidence tends to show the opposite: that defendant reduced the asking price of the house by more than $10,000.00, opened her house to the Koechlins and, later, to their inspectors, signed the contract, and, when she realized she was bound by it, placed her belongings in storage and took an apartment. The only evidence of any failure to cooperate was her refusal to make repairs or negotiate as to repairs. Since she had no duty in this regard, there was no evidence to support a finding that appellant breached her duty to cooperate under the Exclusive Listing Contract.

Based upon the foregoing, it is clear that defendant was well within her contractual rights to refuse to pay for the repairs demanded by the prospective buyers and that the Koechlins were not ready or willing to purchase the property until that condition was fulfilled. Having so determined, we reverse the trial court's judgment awarding commission fees to plaintiff.

Reverse.

Judges JOHNSON and ORR concur.