**Sharon CALDWELL, Plaintiff,**

v.

**Larry K. LINKER, W. Allan Edwards and Board of Trustees of Randolph Community College, Defendants.**

**No. 2:94CV00434.**

United States District Court, M.D. North Carolina, Greensboro Division.

Oct. 6, 1995.

Judith G. Behar, Greensboro, N.C., for plaintiff.

C. Thomas Ross, Winston–Salem, N.C. Alan V. Pugh, Gavin, Cox, Pugh, Gavin & Gavin, Asheboro, N.C., for defendants.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Senior District Judge.

This matter comes before the Court on defendants' Motion for partial Summary Judgment. For the reasons stated herein, defendants' Motion will be granted with respect to plaintiff's claims for violation of her due process rights, false imprisonment, breach of contract, conversion, discrimination and violation of plaintiff's due process by the Board of Trustees, and negligent oversight by the Board of Trustees.

### FACTS

Plaintiff was employed by Randolph Community College (hereinafter "R.C.C.") in 1991 and she received a one-year contract for July 1, 1992 to June 30, 1993. Plaintiff was employed by R.C.C. as an Instructor–Program Developer in the Continuing Education Division. Soon after her employment began, plaintiff informed her supervisors that defendant Edwards, vice president of R.C.C., was harassing her. In July of 1993, without any prior notice, Edwards offered plaintiff a two-month contract. After receiving this offer, plaintiff complained to defendant Linker, president of R.C.C., that Edwards had spoken and acted in ways that were demeaning to her and requested a full-year contract. Linker told plaintiff she would receive a full-year contract.

On August 9, 1993, plaintiff was offered a full-year contract with the "special condition" that unless she generated an average of 12 FTEs for the coming year, her contract would not be renewed. Dean of Continuing Education, Wayne Eller, informed plaintiff that she must return the contract the next day. A FTE is a "Full Time Equivalent" and is a number used to measure how much each instructor is earning for R.C.C. from the student participation in classroom instruction. The parties do not provide any additional detail regarding the nature of a

FTE but it is sufficient to understand that it is a number indicating the income for R.C.C. generated by a particular instructor.

On August 13th, plaintiff met with Eller, Linker, and Edwards in Linker's office. This meeting occurred at approximately 5 p.m. on a Friday afternoon. Before signing the contract, plaintiff added the statement that "the 'special conditions' of this contract were a continuation of harassment directed at her and that this position's success cannot and should not be measured by the FTEs." Plaintiffs then signed the contract. Linker refused to accept the contract with the added statement, but offered to rewrite the contract without the statement and allow plaintiff to submit the statement in a separate document. Plaintiff rejected this offer. Linker then informed plaintiff that R.C.C. was no longer her employer.

Linker requested that plaintiff return her keys to the administrative building. Plaintiff states that Linker gestured for Edwards to block the door, which Edwards did. Linker then reached for plaintiff's keys and plaintiff refused to surrender the keys. Plaintiff demanded that Edwards step out of her way, which he did after several requests to move. Plaintiff then left Linker's office.

On the following Monday, plaintiff returned to the R.C.C. and Eller requested that plaintiff meet with Linker and Edwards in Linker's office. Plaintiff refused, but suggested that they meet in the student union. Instead of meeting plaintiff, Linker arranged for the Sheriff and a deputy to meet plaintiff. Plaintiff was escorted to her office to gather her personal belongings. Once in her office, plaintiff requested but was not allowed to take a Zenger–Miller instructor's manual. The Zenger–Miller program is a training program that is licensed to individual schools for the use by the licensed school. All instructors using the Zenger–Miller program must attend a training program in order to become certified to teach with the Zenger–Miller materials. After collecting her personal belongings, plaintiff was then escorted off of the R.C.C. campus.

Two days later, plaintiff filed a charge of discrimination against R.C.C. with the Equal Employment Opportunity Commission. Af-

ter more than 180 days had elapsed and no decision had been made on plaintiff's complaint, she requested and received a notice of right to sue. Plaintiff then filed this action.

Defendants have moved for Summary Judgment on six of plaintiff's seven claims. The facts in this case are not in dispute with respect to the claims for which defendants have moved for summary judgment.

## DISCUSSION

Summary judgment must be granted if the record reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the burden of persuasion on these issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A non-movant may survive the motion by producing "evidence from which a jury might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The substantive law applicable to the case determines whether a fact is material. *Id.* at 248, 106 S.Ct. at 2510. In considering evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Id.* at 255, 106 S.Ct. at 2513–14.

### I. Violation of Due Process

■ Plaintiff's first claim is for the violation of her due process rights because of defendants' failure to provide her with sixty days notice that her contract was not to be renewed. In order to be successful on this claim, plaintiff must first establish that she had a property or liberty interest in her teaching position and that the property or liberty interest was violated by her discharge. *Privette v. University of North Carolina at Chapel Hill*, 96 N.C.App. 124, 385 S.E.2d 185 (1989). R.C.C.'s personnel handbook and policy handbook states that "at least 60 days prior to the expiration of the employee's regular contract of employment, those employees who will not be tendered a new contract will be so notified by certified letter, mailed to his/her residence address on record at the College." Plaintiff contends

that the personnel handbook created a due process right to receive sixty days notice if her contract was not to be renewed. Plaintiff therefore claims that defendants' failure to provide her with notice sixty days before her contract expired constituted a violation of her due process rights.

The provision in the personnel handbook is clear. Plaintiff is only entitled to the sixty day notice if R.C.C. did not intend to offer plaintiff a contract renewal. However, the facts clearly indicate that defendants presented plaintiff with a new contract in an attempt to renew plaintiff's employment. Although this new contract contained a clause that plaintiff did not agree with, the fact remains that plaintiff was still presented with a new contract. Plaintiff's failure to receive a contract renewal was due to her refusal to accept R.C.C's tendered contract. Since plaintiff was offered a new contract, defendants were not required to provide plaintiff with any notice. Accordingly, plaintiff's due process rights were not violated since she was not entitled to the sixty day notice.

Plaintiff further contends that she was entitled to a grievance hearing since the personnel handbook states that "if R.C.C. decides not to tender a new contract to an employee, that employee shall be notified that he/she has a right to a hearing ...". Again, this provision does not apply to plaintiff since she was tendered a new contract.

Plaintiff contends that her due process rights were violated when her contract was not renewed and defendants failed to provide her with sufficient notice of the non-renewal or of her right to a hearing. However, plaintiff is only entitled to notice or a hearing if R.C.C. decides not to tender plaintiff with a new contract. It is undisputed that plaintiff was offered a new contract and that she was told she no longer worked at R.C.C. because she would not accept the contract offered. Since plaintiff was offered a new contract, the notice and grievance requirements in the policy manual do not apply. Thus, plaintiff's due process rights have not been violated. Accordingly, defendants' Motion to Dismiss plaintiff's claim for violation of due process will be granted.

## II. False Arrest and False Imprisonment

Plaintiff's third claim is for false arrest or false imprisonment. The first alleged instance of false imprisonment was when Linker and Edwards prevented plaintiff from leaving Linker's office after she was instructed to return her keys. The second instance was when she was escorted off campus by the Sheriff.

False imprisonment is the illegal restraint of a person against their will. *Black v. Clark's Greensboro, Inc.,* 263 N.C. 226, 139 S.E.2d 199 (1964). The restraint must be both involuntary and unlawful. *Id.* at 228, 139 S.E.2d 199. In the present action, plaintiff contends, and for the purposes of this action it must be assumed, that the restraint was against her will, thus making the restraint involuntary. Defendants however contend that the restraint was not unlawful.

Defendants cite a North Carolina statute that allows a private person to detain another if there is probable cause to believe that the person detained has committed, in their presence, a crime involving theft or destruction of property. N.C.G.S. 15A–404(b)(4). The manner of detention must be reasonable considering the offense involved and the circumstances of the detention. N.C.G.S. 15A–404(c).

In the present action, defendants contend that they were justified in detaining plaintiff in both instances. With regard to the first incident, defendants contend that Linker, in his capacity as President of R.C.C., had the right to demand that plaintiff return her keys to the administrative building and that plaintiff was required to give the keys to Linker. Defendants contend that at all times the keys belonged to R.C.C. and that plaintiff's possession of the keys was a type of bailment. Defendants further contend that a bailee who, on demand, refuses to deliver a chattel to the person entitled to the immediate possession thereof is liable for conversion. *Smith v. Durham,* 127 N.C. 417, 37 S.E. 473 (1900) *See also* N.C.G.S. 14–168.1. Thus, defendants contend that plaintiff was committing conversion by refusing to

give her keys to Linker and therefore, defendants were entitled to reasonably restrain plaintiff.

Defendants also argue that plaintiff's employment was severed when she refused to sign the offered contract and thus plaintiff had no legal right to continued possession of the keys. If in fact there was no contract between R.C.C. and plaintiff, then plaintiff had no right to the keys and she was in essence committing conversion thereby giving defendants the right to detain her.

Plaintiff does not dispute the fact that Linker demanded that she return her keys. Plaintiff instead contends that she had a valid contract with R.C.C. at the time Linker demanded the keys and was therefore in the lawful possession of school property. This argument has one major deficiency. Even if plaintiff was under a valid contract with R.C.C. at the time Linker demanded the return of the keys, Linker, as President of R.C.C., could ask for the return of R.C.C. property. Plaintiff offers no evidence to indicate that she had any right to possess the keys once the R.C.C. representative requested that they be returned.

■ The issue is not whether the keys were properly possessed by plaintiff, but whether plaintiff refused to return property that belonged to R.C.C. when requested to do so by the R.C.C. representative. It is undisputed that Linker requested that plaintiff return the keys and that she refused. This refusal was sufficient to justify Linker in temporarily restraining plaintiff and attempting to have the R.C.C.'s property returned. The next question becomes whether the restraint used was reasonable considering the offense and circumstances involved. *State v. Ataei–Kachuei,* 68 N.C.App. 209, 314 S.E.2d 751 (1984).

■ The restraint in this action consisted of Edwards blocking the door while Linker reached for the keys in plaintiff's possession. Plaintiff states that after telling Edwards several times to let her out of the office, Edwards eventually complied. Plaintiff was restrained for a very brief time and the restraint consisted of having her exit from Linker's office be temporarily blocked. At no time does plaintiff allege that any defendant used actual force to keep her in Linker's office. Based on the evidence presented, no reasonable jury could find that the simple act of standing in front of a door for a few seconds was a unreasonable given the circumstances involved in the present action.

Whether or not plaintiff was in fact converting the keys to her own use, Linker, as president of R.C.C., had the authority to request the R.C.C. keys be returned. Plaintiff's refusal to comply with Linker's demand was sufficient to justify the temporary restraint involved in this particular action.

■ The second instance of false imprisonment was on August 16th when the Sheriff escorted plaintiff to her office and then off campus. However, plaintiff never alleges that the Sheriff totally confined her. All plaintiff alleges the sheriff did was escort her to her office to retrieve some personal items and then off campus. Based on her allegations, plaintiff was free to leave the R.C.C. campus at any time. Since plaintiff was never prevented from leaving the R.C.C. campus by the Sheriff, she was never totally restrained and never falsely imprisoned.

Since plaintiff was not unreasonably restrained by defendants when she refused to return R.C.C.'s keys to Linker, defendants did not falsely imprison plaintiff. When the Sheriff escorted plaintiff to her office and then off campus, plaintiff was free at all times to simply leave the R.C.C. campus. Plaintiff was not totally restrained by the Sheriff and thus could not have been falsely imprisoned. At no time was plaintiff falsely imprisoned and therefore, defendants' Motion for Summary Judgment with respect to plaintiff's third claim will be granted.

### III. Breach of Contract

■ Plaintiff's fourth claim is for breach of contract. Plaintiff contends that she accepted the contract offered by R.C.C. when she signed the contract. Basic contract law requires that in order for a contract to be formed, there must be a "meeting of the minds" as to the material terms of the contract. *Satterfield v. Pappas,* 67 N.C.App. 28, 312 S.E.2d 511 (1984). Plaintiff contends

that she intended to accept the contract as offered and did not intend to void the contract by adding a statement nor did she intend to create a conditional acceptance. Instead plaintiff states that there was a meeting of the minds as to all material terms of the contract since her added statement was not a material term in the contract.

The clause in question requires plaintiff to maintain a minimum of 12 FTEs in order for her contract to be renewed for the following year. Plaintiff argues that R.C.C. is under no obligation to renew a contract and therefore this clause is extraneous. Given the circumstances surrounding plaintiff's employment, this analysis is not entirely correct.

Plaintiff had complained that she was being harassed. It was reasonable for defendants to be concerned that if plaintiff's contract were not renewed, she could then claim that the failure to renew was a result of this same harassment. A reasonable method for defendants to protect themselves and R.C.C. was to specifically state the performance criteria that plaintiff must satisfy in order to have her contract renewed. If plaintiff failed to satisfy the criteria, her contract would not be renewed and this non-renewal would be directly related to her failure to satisfy the performance criteria. Therefore, the requirement that plaintiff maintain a minimum of 12 FTEs was not an extraneous clause but was instead an integral part of the offered contract.

Plaintiff attempted to modify the performance criteria by adding the statement that the "special conditions" were a continuation of harassment directed at her and that this positions's success cannot and should not be measured by FTEs. This added clause clearly indicates that plaintiff did not accept the performance criteria established by R.C.C. and that she was unwilling to have her contract renewal be based on maintaining a minimum of 12 FTEs.

■ Plaintiff argues that her added statement was merely a commentary or a statement that FTEs should not be the sole measure of successful performance. A contract can be accepted even though an expression of hope or suggestion as to terms have been added to the original offer. *Carver v.* *Britt,* 241 N.C. 538, 85 S.E.2d 888 (1955). In *Carver,* the defendant accepted the plaintiff's offer to sell the defendant's property with the added statement "subject to details to be worked out by you and T.O. Pangle". *Id.* at 540, 85 S.E.2d 888. The court found that the statement related to the ultimate performance of the contract and as such was a conditional acceptance and not a counteroffer. *Id.*

*Carver* is clearly distinguishable from this present action. The "special conditions" included in plaintiff's contract relate to performance evaluation and not simply the details of contract execution. In the present action, there are no future details to be worked out because defendants had established that FTEs were to be used to measure plaintiff's success. The method of plaintiff's evaluation was a material term of the contract offer and plaintiff's added statement indicates that she was unwilling to accept the performance criteria as expressed in the original contract. Instead of accepting R.C.C.'s offer, plaintiff modified the offer and created a counteroffer. Since plaintiff did not accept the original contract and defendants did not accept the contract as modified by plaintiff, there was no "meeting of the minds" and consequently no contract formed. Since there was no contract formed, it logically follows that there could not have been a breach of that contract. Accordingly, defendants' Motion for Summary Judgment with respect to the claim for breach of contract will be granted.

## IV. Conversion

■ Plaintiff's fifth claim is for conversion. Plaintiff claims that defendants converted her Zenger–Miller program materials when they refused to allow her to take them with her when she was escorted off the R.C.C. campus. Defendants contend that R.C.C. is the rightful owner of the material since R.C.C. paid for the materials.

Defendants admit that the Zenger–Miller materials are in their possession. The only question is who is the rightful owner. Plaintiff appears to argue that R.C.C. owns the videotapes and participant materials while the instructor manual remains the property

of the instructor, plaintiff in this case. To support this argument, plaintiff quotes Dr. Karen Wylie. Dr. Wylie trained plaintiff in the Zenger–Miller programs and Dr. Wylie states that it was her understanding that the videotapes and participant materials belong to R.C.C. while the instructor manuals belong to the instructor taking the training. Dr. Wylie claims to be a certified Master Trainer in the Zenger–Miller programs but she does not claim to represent the Zenger–Miller company. Dr. Wylie does not claim to speak for Zenger–Miller and only states her personal understanding.

Defendants quote a representative of Zenger–Miller who states that it is Zenger–Miller's policy to license only with the organization and not with individuals and that the ownership of the instructor materials is up to the purchasing organization. Thus, it appears to be the position of the Zenger–Miller organization that R.C.C. determines who owns the instructor manuals. Plaintiff presents no evidence, other than that of Dr. Wylie, to refute the evidence that R.C.C. determines who owns the instructor manuals.

It appears that R.C.C., as the purchaser and licensee of the Zenger–Miller program, determines the ownership of the instructor manuals. Defendants, as representatives of R.C.C., had it within their power to determine that R.C.C. and not plaintiff owned the instructor manuals. Since defendants determined that R.C.C. did in fact retain ownership of the instructor manuals, it was not possible for defendants to convert property that they rightly possessed. Accordingly, defendants' Motion for Summary Judgment with respect to plaintiff's claim for conversion is granted.

### V. Violation of Due Process by the Board of Trustees

Plaintiff's sixth claim is for the violation if her due process rights by the Board of Trustees. The Board of Trustees' oversees the operation of Community Colleges. N.C.G.S. § 115D.20. Plaintiff contends that Linker was acting as the Board of Trustees policy maker and any policy established by Linker must represent the official Board policy. Plaintiff then goes on to argue that the Board failed to provide adequate grievance procedures to insure that plaintiff's due process rights were not violated.

As discussed earlier, plaintiff had the contractual right to receive notice and use the grievance process if she was not to be offered a new contract. However, plaintiff was in fact offered a new contract although she did choose not to accept the tendered contract. Accordingly, the personnel handbook did not provide plaintiff with either a property or liberty interest in her teaching position and the Board of Trustees could not have violated a due process right that did not exist. Therefore defendants' Motion for Summary Judgment will be granted with respect to the claim for Violation of plaintiff's due process rights by the Board of Trustees.

### VI. Negligent Oversight by the Board of Trustees

Plaintiff's seventh and final claim is for the negligent oversight of defendant's activities by the Board of Trustees. One on the duties of the Board of Trustees is to elect a president of the college and to elect or employee all other personnel of the institution. N.C.G.S. § 115D–20(1) & (2). This statute essentially makes the Board of Trustees the de facto employers of defendants. In North Carolina, an employer is liable for negligence in employing or retaining an employee whose wrongful conduct injures another. *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 340 S.E.2d 116, rev. denied, 317 N.C. 334, 346 S.E.2d 140 (1986). In order to establish a claim, plaintiff must first establish that an incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetence. *Id.*, 79 N.C.App. at 495, 340 S.E.2d 116.

Since the Board of Trustees is responsible for the hiring of the R.C.C. president and all other R.C.C. employees, the Board should be held to the same standards as other employers. Thus, the Board is only liable to plaintiff if the Board actually knew or had reason to know of the allegedly tortious conduct of the R.C.C. employees.

The R.C.C. policy manual establishes the procedures an employee must follow to appeal any personnel matters. Plaintiff admits that these procedures are outlined in the policy manual but she contends that the appeal process would essentially consist of appealing to defendants and this appeal would have been pointless. Plaintiff also contends that once she was escorted off campus, she did not have access to the R.C.C. policy manual which contained the appeal procedures.

Neither of plaintiff's arguments is persuasive. R.C.C. had a appeal procedure in place in an attempt to provide parties such a plaintiff a procedure for their grievances. This written policy was the official policy of R.C.C. and as such was the policy which the Board of Trustees would assume would be followed. Plaintiff offers no evidence to indicate that the Board knew or should have known that the established grievance policies would not be followed.

The fact that plaintiff chose not to follow the procedures or that plaintiff was unaware of the procedures does not create any fault on the part of the Board. Plaintiff never alleges that the Board of Trustees was aware of any facts that would indicate that an appeal by plaintiff would have been pointless or that she did not have access to a copy of the R.C.C. policy manual.

R.C.C. had established written grievance procedures which were to be followed by an employee alleging discrimination. These procedures were the official policy of R.C.C. and also the official policy of the Board of Trustees. The Board can only be liable for discrimination or negligent oversight if they knew of should have known that R.C.C. was not complying with the established procedures. There is no evidence to indicate that the Board of Trustees knew or should have known that the R.C.C. was not complying with the formal grievance procedures. Therefore the Board of Trustees were not negligent in supervising defendants and defendants' Motion for Summary Judgment with respect to claim the claim for negligent supervision by the Board of Trustees will be granted.

**IT IS THEREFORE ORDERED,** that defendants' Motions to Dismiss Claims one, three, four, five, six and seven be, and same hereby are, **GRANTED** and those claims are **DISMISSED.**