GEER, Judge.
On 15 November 1997, an automobile accident occurred involving Katie Smith and Bobby Murrell, with Mr. Murrell being at fault. This appeal arises out of a dispute between Ms. Smith's underinsured motorist carrier, plaintiff North Carolina Farm Bureau Mutual Insurance Company ("Farm Bureau"), and Mr. Murrell's insurance carrier, Progressive Insurance Company ("Progressive"). Farm Bureau advanced payment of Mr. Murrell's policy limits to Ms. Smith and, in this action, sought reimbursement from Progressive. Farm Bureau appeals from the trial court's judgment, following a bench trial on stipulated facts, concluding that Farm Bureau's claim was barred by the statute of limitations. Farm Bureau seeks reversal on the grounds that the facts establish (1) an enforceable settlement agreement between the carriers, and (2) the defense of equitable estoppel. Because the stipulated facts support the trial court's conclusion that Farm Bureau did not accept Progressive's settlement offer in a reasonable time and that Farm Bureau did not prove the elements of equitable estoppel, we affirm the trial court.
Facts
The parties stipulated to the following facts. Mr. Murrell, who was at fault in the underlying automobile accident, was insured under a Progressive policy that had liability limits for bodily injury of $25,000.00 per person and $50,000.00 per accident. Ms. Smith was insured under a Farm Bureau policy that provided underinsured motorist ("UIM") coverage in an amount exceeding the liability limits of the Progressive policy.
After the accident, Ms. Smith asserted a claim for damages against Mr. Murrell, as well as a claim under the Farm Bureau policy for UIM benefits. In February 2000, Progressive tendered its policy limits of $25,000.00 to Ms. Smith as a proposed compromise settlement. Farm Bureau, as the UIM carrier, was provided with written notice of Progressive's tender of liability limits. On 18 February 2000, Farm Bureau advanced the $25,000.00 liability limits to Ms. Smith, thereby preserving its subrogation rights under N.C. Gen. Stat. § 20-279.21(b)(4) (2003).[1] On 1 June 2000, Farm Bureau and Ms. Smith settled her UIM claim for $12,500.00. In consideration of that payment, Ms. Smith executed a release of Farm Bureau.
On 19 June 2000, John S. Gray, a claims representative for Farm Bureau, sent a letter to Gloria Solomon, a claims representative for Progressive, notifying Progressive of the settlement with Ms. Smith and requesting that Progressive reimburse Farm Bureau for the advanced payment by Farm Bureau to Ms. Smith. When Progressive failed to respond, Mr. Gray sent a second letter to the same effect on 27 July 2000.
On 29 August 2000, Albert A. Arredondo, a claims representative for Progressive, responded to Mr. Gray's correspondence, offering to pay $24,845.50 - the $25,000.00 liability limit less $154.50 advanced by Progressive - to Farm Bureau in exchange for (1) the signing by Farm Bureau of an enclosed release and (2) proof of payment of the $25,000.00 to Ms. Smith. Mr. Gray responded to Mr. Arredondo's correspondence in a6 September 2000 letter, stating that Farm Bureau was unwilling to sign the release provided by Mr. Arredondo with its current wording and insisting on reimbursement for the full $25,000.00. Mr. Gray suggested that his prior correspondence substitute for a release. In a letter dated 28 September 2000, Mr. Arredondo replied, "I have reviewed your September 6, 2000 letter with management and we agree with you up to a point." Progressive stated that it would not require Farm Bureau to sign a full release, but it would require Ms. Smith to do so. Mr. Arredondo enclosed another release for Ms. Smith's signature, and repeated that Progressive would pay "the remainder of [Progressive's] policy limits" to Farm Bureau only upon the return of the release signed and dated by Ms. Smith. Progressive received no response to Mr. Arredondo's 28 September 2000 letter, and Farm Bureau did not return the release.
The three-year statute of limitations on Ms. Smith's claims ran on 15 November 2000. Progressive heard nothing further from Farm Bureau until April 2001, when Mr. Gray contacted Mr. Arredondo and requested that Progressive make payment of $25,000.00 to Farm Bureau. On 18 April 2001, Mr. Arredondo notified Farm Bureau that no payment would be made without proof that the statute of limitations had been tolled. Finally, on 25 May 2001, Farm Bureau provided to Progressive a copy of a "Full Release Of All Claims With Indemnity" signed by Ms. Smith. The release did not state when Ms. Smith actually signed it.
On 28 August 2001, plaintiffs filed this action, alleging motor vehicle negligence and breach of contract and seeking adeclaratory judgment. The parties filed cross-motions for summary judgment that the trial court denied. The case was tried to the Honorable Ernest B. Fullwood in a bench trial on stipulated facts. Judge Fullwood entered judgment in favor of defendants on 11 June 2003. Plaintiffs filed timely notice of appeal to this Court.
Standard of Review
On appeal, the standard of review from a judgment entered after a non-jury trial is "whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." Sessler v. Marsh, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163, disc. review denied, 354 N.C. 365, 556 S.E.2d 577 (2001). Because the parties stipulated to the facts, the issue before this Court is whether the findings of fact support the trial court's conclusions of law. We review the trial court's conclusions of law de novo. Browning v. Helff, 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000).
Discussion
In this case, Farm Bureau's right to recover for payments made to Ms. Smith arises solely by virtue of Farm Bureau's subrogation rights as the UIM carrier for Ms. Smith. This Court has held that when an insured's action is time-barred, the UIM carrier's action is time-barred as well because, in a subrogation action, the insurer succeeds only to the rights of the insured and no new cause of action is created. Nationwide Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 109 N.C. App. 281, 284, 426 S.E.2d 298, 300, disc. review denied, 333 N.C. 792, 431 S.E.2d 26 (1993). Thus, to theextent that Ms. Smith's claims against Mr. Murrell are barred by the statute of limitations, Farm Bureau's subrogation claims are also barred.
It is undisputed that the statute of limitations on Ms. Smith's claims expired on 15 November 2000. Since Farm Bureau did not file suit until 28 August 2001, its subrogation claim would ordinarily be barred. Farm Bureau argues, however, that the statute of limitations does not bar Farm Bureau's subrogation claim because (1) it entered into an enforceable settlement agreement with Progressive, or, alternatively, (2) if no agreement exists, Progressive is equitably estopped from asserting the statute of limitations as a defense.
A. Existence of a Settlement Agreement
With respect to the existence of a settlement agreement between the carriers, the trial court concluded that "there was never any meeting of the minds of the parties with regard to the terms of any alleged contract to settle Farm Bureau's subrogation claims." Accordingly, the trial court ruled that "[t]here is no existing contract between Progressive and Farm Bureau pursuant to which Farm Bureau is entitled to recovery of any damages from defendants Progressive or Mr. Murrell as a result of the November 15, 1997 accident between plaintiff Ms. Smith, and Mr. Murrell."
"It is axiomatic that a valid contract between two parties can only exist when the parties 'assent to the same thing in the same sense, and their minds meet as to all terms.'" Normile v. Miller, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985) (quoting Goeckel v.Stokely, 236 N.C. 604, 607, 73 S.E.2d 618, 620 (1952)). Mutual assent - or a "meeting of the minds" - requires that the party accepting an offer communicate to the offeror an acceptance of the "exact terms" set out in the offer. Id. If the acceptance attempts to change the terms of the offer or add any new terms, "'there is no meeting of the minds and, consequently, no contract.'" Id. (quoting 8A G. Thompson, Commentaries on the Modern Law of Real Property, § 4452 (1963)). Such a purported acceptance is actually a counteroffer that amounts to a rejection of the original offer. Id. See also Richardson v. Greensboro Warehouse & Storage Co., 223 N.C. 344, 346, 26 S.E.2d 897, 898 (1943) (citations omitted) ("There must be no lack of identity between offer and acceptance, and the parties must appear to have assented to the same thing in the same sense."). Nevertheless, as our Supreme Court has explained,
Where the contract, as here, is in several writings - as offer and acceptance - and not contained in a single document which both parties have executed, the Court will not, of course, be astute to detect immaterial differences in the phrasing of offer and acceptance which might defeat the contract, but will try to give to each writing a reasonable interpretation under which substantial justice may be reached according to the intent of the parties. But it is the mutual intent that governs, and for this reason there must be substantial agreement between offer and acceptance in all material particulars in order that such mutuality may appear.
Id. The question presented by this appeal is whether there was agreement on all material terms. Farm Bureau contends that a contract was formed in September 2000 through the series of letters between the carriers from June to September 2000. The findings of fact, however, establish that Farm Bureau did not accept Progressive's offer during the summer of 2000. In its 6 September 2000 letter, Farm Bureau rejected Progressive's offer to pay $24,845.50 in exchange for a release from Farm Bureau when it refused to sign the requested release and insisted on payment of the full $25,000.00. Progressive then made a second offer on 28 September 2000, proposing to pay "the remainder of [Progressive's] policy limits" in exchange for a full release from Ms. Smith in the form enclosed. Progressive stressed: "Note that we will only pay out the remainder of our policy limits of $25,000.00 to Farm Bureau upon [the release's] return, signed and dated by your insured Katie Smith."
At this point, there was an outstanding offer in the form of Progressive's 28 September 2000 letter that Farm Bureau had not yet accepted. Farm Bureau could have accepted the offer by returning the signed release, but it did not do so until May 2001. See Koppers Co. v. Kaiser Aluminum & Chem. Corp., 9 N.C. App. 118, 126, 175 S.E.2d 761, 767 (1970) ("`Where the offer so provides, it may be accepted by performing . . . a specified act. An acceptance of an offer may be by act, as where an offer is made that the offerer will pay or do something else, if the offeree shall do a particular thing.'" (quoting 17 C.J.S. Contracts § 41(d), at 668)).
Farm Bureau contends that there was agreement on all material terms except the wording of the release and that the wording was"immaterial." Farm Bureau cites Carver v. Britt, 241 N.C. 538, 85 S.E.2d 888 (1955), in which a telegram stating "[y]our telegram relative sale my property is accepted subject to details to be worked out by you and T. O. Pangle" was held to be an acceptance of an offer to purchase real property. The Court stated that "[w]here an offer is squarely accepted in positive terms, the addition of a statement relating to the ultimate performance of the contract does not make the acceptance conditional and prevent the formation of the contract." Id. at 540, 85 S.E.2d at 890. With respect to the telegram, the Court observed, "[t]he defendant's acceptance of the offer was positive. How can a statement relating not to the making of the contract, but merely to the working out of the details of performance be deemed to change it?" Id. at 541, 85 S.E.2d at 891.
In this case, however, Farm Bureau never positively accepted Progressive's offer. Farm Bureau had flatly refused to sign a release on its own behalf, as requested in Progressive's first offer, and then did not communicate any agreement to having Ms. Smith sign the second proposed release. The question of the release did not relate "merely to the working out of the details of performance," id., but instead went to the heart of the contract. The wording of the release was at the core of the negotiations and was an issue on which the parties disagreed. Moreover, there was also a dispute as to the amount to be paid by Progressive. Progressive offered to pay $24,845.50, while Farm Bureau insisted on $25,000.00. Even though the difference is the modest amount of$154.50, we cannot say that the lack of agreement as to the amount to be paid involved an immaterial term.
Here, the material terms of the settlement were the amount to be paid by Progressive and the release to be provided by Farm Bureau. Since neither of these terms was finally agreed upon in the series of letters in the summer of 2000, the trial court properly concluded there was no settlement agreement between the carriers as of September 2000.
Farm Bureau alternatively contends that, even if there was no contract formed in September 2000, it accepted Progressive's 28 September 2000 offer by returning the release in May 2001. The trial court, however, concluded that Farm Bureau did not accept the 28 September 2000 counteroffer within a reasonable time. We agree with the trial court.
"`As a general rule, where no time is fixed for the termination of a contract it will continue for a reasonable time, taking into account the purposes that the parties intended to accomplish . . . .'" City of Gastonia v. Duke Power Co., 19 N.C. App. 315, 318, 199 S.E.2d 27, 30 (emphasis added) (quoting 2 Strong's N.C. Index 2d Contracts § 17, at 322), cert. denied, 284 N.C. 252, 200 S.E.2d 652 (1973). Here, Farm Bureau did not send Progressive a copy of the release signed by Ms. Smith until 25 May 2001. By that time, the statute of limitations period had run, and the condition included in Progressive's offer - the release - was no longer meaningful. The trial court did not, therefore, err inconcluding that Progressive's offer was not accepted within a reasonable time.
B. Equitable Estoppel
Farm Bureau also assigns as error the trial court's conclusion that equitable estoppel did not bar Progressive from raising a statute of limitations defense. On this issue, the trial court concluded that "[p]laintiffs have not presented evidence to this Court that defendant Mr. Murrell or defendant Progressive engaged in any conduct or statement to plaintiffs which would support the application of equitable estoppel to preclude defendants' assertion of the applicable statute of limitations."
North Carolina courts "have recognized and applied the principle that a defendant may properly rely upon a statute of limitations as a defensive shield against 'stale' claims, but may be equitably estopped from using a statute of limitations as a sword, so as to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit." Friedland v. Gales, 131 N.C. App. 802, 806, 509 S.E.2d 793, 796 (1998). The essential elements of equitable estoppel are:
"(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice."
Id. at 807, 509 S.E.2d at 796-97 (quoting Parker v. Thompson-Arthur Paving Co., 100 N.C. App. 367, 370, 396 S.E.2d 626, 628-29 (1990)). The party asserting equitable estoppel has the burden of proving the essential elements of the defense. State Farm Mut. Auto. Ins. Co. v. Atl. Indem. Co., 122 N.C. App. 67, 75-76, 468 S.E.2d 570, 575 (1996).
There need not be actual fraud, bad faith, or an intent to mislead or deceive for the doctrine of equitable estoppel to apply. Duke Univ. v. Stainback, 320 N.C. 337, 341, 357 S.E.2d 690, 692 (1987). "If the [defendant] makes representations which mislead the [plaintiff], who acts upon them in good faith, to the extent that he fails to commence his action in time, estoppel may arise." Id., 357 S.E.2d at 692-93. It must "'be shown that the conduct of the party against whom waiver of the . . . limitation is claimed is such as to cause the adverse party to change his position by lulling him into false security, and causing him to delay or waive assertion of his rights to his damage.'" Duke Univ. v. St. Paul Mercury Ins. Co., 95 N.C. App. 663, 672-73, 384 S.E.2d 36, 42 (1989) (quoting 18A Rhodes, Couch on Insurance 2d § 75:183, at 177 (1983)).
Farm Bureau contends that based on the carriers' attempts to resolve the dispute, Farm Bureau reasonably believed that an agreement had been reached that it would receive payment of Progressive's liability policy limits in exchange for its agreement to waive its subrogation claim and a signed release by Ms. Smith. According to Farm Bureau, Progressive lulled Farm Bureau into afalse sense of security and caused Farm Bureau to forgo pursuing its legal remedy against Mr. Murrell.
In a series of cases, this Court has held that "requests for further negotiations or participation in settlement discussions are not conduct which would invoke the doctrine of equitable estoppel and prevent a party from relying on a statute of limitations defense." Teague v. Randolph Surgical Assocs., P.A., 129 N.C. App. 766, 772, 501 S.E.2d 382, 387 (1998). In Teague, the parties' representatives engaged in negotiations, and the defendants' representative proposed a time and date to meet with counsel and discuss settlement. Even though the plaintiffs' counsel agreed to the scheduled meeting, the defendants' representative canceled further negotiations, citing his belief that the claim was time-barred. This Court held that "[defendant's representative's] offer to discuss settlement or possible arbitration was not of such a nature as to reasonably lead plaintiffs to believe that defendants would not assert any defenses they might have, including the statute of limitations, in the event settlement was not accomplished." Id.
Similarly, in St. Paul Mercury Ins. Co., St. Paul conceded, during negotiations between the parties, that there was the "possibility" of coverage under the St. Paul policy, and later proposed a compromise to Duke by tendering 50% of the legal expenses incurred by Duke. 95 N.C. App. at 673, 384 S.E.2d at 43. The Court held that this was not sufficient to show that St. Paul should be equitably estopped from pleading the statute oflimitations because the parties' participation in settlement negotiations did not waive St. Paul's right to assert the statute of limitations. Id. The Court observed that "'[m]ere negotiations with a possible settlement unsuccessfully accomplished is not that type of conduct designed to lull the claimant into a false sense of security so as to constitute an estoppel by conduct thus precluding an assertion of . . . [limitations] by the insured.'" Id. (alteration in original; quoting Desai v. Safeco Ins. Co. of America, 173 Ga. App. 815, 328 S.E.2d 376, 379 (1985)).
Plaintiffs cite Duke Univ. v. Stainback, 320 N.C. 337, 357 S.E.2d 690 (1987), as analogous to the present case. In Stainback, the defendant's counsel repeatedly assured Duke that the defendant's accrued bills would be paid. When Duke subsequently filed suit for payment, the defendant asserted a statute of limitations defense. Our Supreme Court held:
[T]he facts found are sufficient to support the conclusion that Stainback is estopped to plead the statute of limitations as a defense. The factual findings indicate a course of conduct by Stainback, through his attorney, which misled Duke. The actions and statements of Stainback's attorney caused Duke to reasonably believe that it would receive its payment for services rendered once the case between Stainback and Investors was concluded, and such belief reasonably caused Duke to foregoing pursuing its legal remedy against Stainback. The actions and statements of Stainback lulled Duke into a false sense of security. Defendant has breached the golden rule and fair play, justifying the entry of equity to prevent injustice.
Id. at 341, 357 S.E.2d at 693. In this case, by contrast, Farm Bureau does not point to any representations or actions of Progressive that were of such a nature as would reasonably lull Farm Bureau into forgoing its legal remedy. Indeed, Mr. Arredondo stated in his 28 September 2000 letter that "[Progressive] will only pay out the remainder of our policy limits of $25,000.00 to Farm Bureau upon [the release's] return, signed and dated by your insured Katie Smith." (Emphasis added.) This case more closely resembles Teague and St. Paul Mercury, where the parties merely engaged in negotiations and no assurances of payment or settlement were made. In sum, "[t]here is nothing in the record to indicate that defendant[s] induced plaintiff[s] to forestall the initiation of this lawsuit. Under the facts of this case, therefore, the doctrine of equitable estoppel does not apply." Carl Rose & Sons Ready Mix Concrete, Inc. v. Thorp Sales Corp., 36 N.C. App. 778, 782, 245 S.E.2d 234, 236 (1978).
Affirmed.
Judges HUDSON and THORNBURG concur.
Report per Rule 30(e).

N.C. Gen. Stat. § 20-279.21(b)(4) provides: "No insurer shall exercise any right of subrogation or any right to approve settlement with the original owner, operator, or maintainer of the underinsured highway vehicle under a policy providing coverage against an underinsured motorist where the insurer has been provided with written notice before a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days following receipt of that notice."